[No. 20791.   In Bank. — February 5, 1892.]

THE PEOPLE, RESPONDENT, v. HARRY WINTERS,
APPELLANT.

CRIMINAL LAW — BURGLARY — INTENT TO COMMIT LARCENY — INSTRUCTION — ERROR WITHOUT PREJUDICE. — On the trial of a defendant charged with burglary, although a charge to the jury that "in every crime or public offense there must exist a union or joint operation of act or intent, or criminal negligence," is erroneous in the use of the word "or," instead of "and," before the word "intent," yet where it appears that the court further charged that before they could convict the defendant they must believe from the evidence, beyond a reasonable doubt, that the defendant entered the house with intent to commit larceny, the error could not have misled the jury to his prejudice.

ID. — REASONABLE DOUBT — EXPLANATION OF DEFENDANT'S CONDUCT — INSTRUCTION. — A charge to the jury that "if there be any reasonable hypothesis, — not a mere possible one, — any reasonable hypothesis upon which the conduct of the defendant (in entering the house) can be explained consistently with his innocence, then the testimony is such as ought to leave a reasonable doubt upon your minds," does not assume guilt and import that it devolved on the defendant to explain his conduct, but means that if the jury, after a full consideration of all the facts of the case, could reasonably explain or account for his conduct on any reasonable hypothesis consistent with his innocence, they should acquit him.

ID. — DEFINITION OF REASONABLE DOUBT. — A charge to the jury defining a reasonable doubt, which conforms substantially to the definition repeatedly approved by the appellate court, will not be held to be erroneous upon appeal, where the defendant has not asked for a more satisfactory definition.

ID. — INTENT OF DEFENDANT — QUESTION OF FACT. — The question of the intent with which a defendant charged with burglary entered the house is a question of fact to be determined by the jury; and where the evidence is sufficient to sustain a finding that the defendant entered with the intent to commit larceny, the verdict will not be disturbed.

ID. —CROSS-EXAMINATION OF DEFENDANT — ERROR WITHOUT PREJUDICE. — The cross-examination of a defendant in a criminal action, as to matters about which he was not examined in chief, is not prejudicial error, where the matters were such as could not by any conceivable possibility have prejudiced the defendant.

APPEAL from a judgment of the Superior Court of Alameda County.

The facts are stated in the opinion.

*Nagle & Nagle*, for Appellant.

The court erred in instructing the jury that in every crime or public offense there must exist a union or joint operation of act or intent, or criminal negligence. (Pen. Code, sec. 20; *People* v. *Harris*, 29 Cal. 679.) The court erred in not giving a full and complete instruction as to reasonable doubt, and in not defining what the certainty must be in order to convict. (*People* v. *Ashe*, 44 Cal. 288.) The court erred in giving the instruction that "if there be any reasonable hypothesis, not a mere possibility, upon which the conduct of the defendant can be successfully proved, consistent with his innocence, then the testimony is such as ought to leave a reasonable doubt upon your minds," as a defendant is not bound to show that his conduct is proper, but it is for the prosecution to show that the defendant's conduct was inconsistent with his innocence. (*People* v. *Carabin*, 14 Cal. 438; *People* v. *Eckert*, 19 Cal. 603; *People* v. *Hurley*, 57 Cal. 145; *People* v. *Ah Sing*, 51 Cal. 372; *People* v. *Williams*, 17 Cal. 142; *People* v. *Marshall*, 59 Cal. 387; *People* v. *Chung Foon Ark*, 61 Cal. 527.) The court erred in permitting the defendant to be cross-examined on matters not testified to on his direct examination. (*Estate of Toomes*, 54 Cal. 516; *People* v. *O'Brien*, 66 Cal. 602; *People* v. *Yeaton*, 75 Cal. 415; *People* v. *Bishop*, 81 Cal. 113.) There is an absence of evidence of intent to commit the burglary charged, and therefore an essential element of the crime is wanting. (*People* v. *Collins*, 53 Cal. 185; *People* v. *Stewart*, 80 Cal. 129.)

*Attorney-General Hart,* and *Deputy Attorney-General Sanders,* for Respondent.

Although the court should have used the word " and," instead of " or," before the word " intent," in the instruction as to the existence of a union or joint operation of " act or intent, or criminal negligence" (Pen. Code, sec. 20), yet the error was not prejudicial. (*State* v. *Miller,* 35 Kan. 328.) The court did not err in defining a reasonable doubt, as the definition was correct. (*People* v. *Strong,* 30 Cal. 151.) The instruction was given by the court of its own motion, and if the defendant wanted a more satisfactory one, he should have asked for it. (*People* v. *Ah Loy,* 57 Cal. 566.)

FITZGERALD, C. — The defendant was accused, by information, of the crime of burglary, charged to have been committed by the entry of the defendant into the house of one John Gunn, with intent to commit larceny. He was convicted of burglary in the first degree, and sentenced to imprisonment in the state prison for the term of six years. From the judgment of conviction, and the order denying the defendant's motion for a new trial, this appeal is taken.

The evidence upon which the verdict was founded is, substantially, as follows: —

Vincent Brewer, a witness for the prosecution, testified that on the fourth day of July, 1890, he was in the employ of John Gunn, the owner and occupant of the house in question, as driver of a dairy wagon; that he had been in town that day, and returned to Gunn's house, where he lived, shortly before twelve o'clock that night; that he entered the house by the back door leading into the kitchen, which he shut and latched on entering, and after extinguishing the gas-light therein he went to his room adjoining the kitchen, and lighted the gas; that he was in the act of turning off the gas before retiring, when he heard the outside kitchen door, by which he entered, opened; that he at first paid but little attention to it, thinking that it was opened by some one connected

with the house, so he put out the gas and got into bed; but hearing nothing further, he became suspicious, and got up and partly opened the door between his room and the kitchen, and saw the defendant in the act of opening the door of a small closet, which, after looking into and picking up one or two things, he, the defendant, passed to a small slide door between the kitchen and dining-room; that after lifting the slide and looking into the dining-room, he went to a table, from which he picked up a parcel; that the defendant then opened the pantry door, and while he was in the act of searching a drawer thereof, witness "yelled out to him and asked him what he was doing"; that defendant "turned, shook his hand, and hissed at him, 'Don't make any noise.'" At this time the companion of the defendant appeared, and they started towards witness, who asked them what they wanted. After some hesitation, one of them answered that they wanted something to eat, and were looking for it.

Witness, being frightened, started to the closet to get something for them to eat, but, on turning, saw that they were whispering to each other. Notwithstanding this, he got some food and set it out for them; one partook of a small piece of bread, and the other drank a little tea. They then shook hands with witness, and, on bidding him good-night, said that they were not burglars, but had been on a spree. The defendant stated that he was an attorney, residing on Montgomery Street, in San Francisco, and that his name was Mullen; the other man stated that he resided on Washington Street, in Oakland, and gave his name and the number of his residence, which witness failed to remember. Witness further testified that they did not drink any water from the faucet in the kitchen after they entered, and that it could not have been drawn by them without his hearing it.

To the witness Rogers, defendant admitted that he went into the house of Gunn on the night in question to get a drink of water, and to the witness Conrad he also admitted that he and his companion were looking

for flowers that night, and that they went into Gunn's garden to get them; that they afterwards went to the back of the house to get a drink of water, and, while there, saw that the inside door was open, and being hungry, they went in to get something to eat; that he was in the act of taking down a tin box with cake in it, when the witness Brewer came in and asked what they wanted; they answered, "Something to eat," and he gave it to them; that the man who was with him was named Williams, but that he could not tell where he could be found.

The defendant, in his testimony, admitted that he was in Gunn's house with his partner on the night in question, but stated that they went in through an open door to get a drink of water, and that they lighted the gas after they got in, and that they did not enter the house with the intention of stealing anything therein.

It is claimed that the court erred in charging the jury that " in every crime or public offense there must exist a union or joint operation of act *or* intent, or criminal negligence."

While it must be conceded that the use of the word " or," instead of "and," before the word "intent," was erroneous, still, we do not see how it could possibly have resulted injuriously to the defendant, for the reason that the court, in further charging the jury upon the same subject, told them, in the language of the statute, that " every person who enters any house with intent to commit . . . . larceny . . . . is guilty of burglary," and again, in substance, that before they could convict the defendant of the crime charged, they must believe from the evidence, beyond a reasonable doubt, that he entered the house with intent to commit larceny. We do not think the jury could have been misled by the error complained of to the prejudice of the defendant.

It is further claimed that the court erred in charging the jury, that " if there be any reasonable hypothesis, — not a mere possible one, — any reasonable hypothesis upon which the conduct of the defendant (in entering

the house) *can be explained* consistently with his inno-
cence, then the testimony is such as ought to leave a
reasonable doubt upon your minds."

This charge is objected to on the ground that "the
court here assumes the guilt of the defendant, and im-
poses on him the burden of proof to show that his con-
duct was reasonable and proper and that he did not
commit the crime he is charged with, instead of being
upon the prosecution to show that all his acts and con-
duct have been inconsistent with his innocence."

It must be presumed that the jury was composed of
men of ordinary intelligence, and were capable of un-
derstanding the English language, and being such, we
do not think they could have understood the court to
mean that it devolved on the defendant to explain his
conduct, but that if the jury, after a full consideration
of all the facts of the case, could reasonably explain or
account for such conduct on any reasonable hypothesis
consisent with his innocence, they should acquit him.
(*People* v. *Hardisson,* 61 Cal. 379.)

It is further contended that the court erred in that
part of its charge defining a reasonable doubt.

The charge of the court on this subject conforms sub-
stantially to the definition of a reasonable doubt given
by Chief Justice Shaw in the Webster case, and which
has been repeatedly approved by this court; but "if the
defendant wanted a more satisfactory definition of the
term 'reasonable doubt,' he should have asked for it."
(*People* v. *Ah Loy,* 57 Cal. 566.)

The contention that the verdict was not justified by
the evidence, because it did not tend to show that the
defendant entered the house with intent to commit lar-
ceny, is untenable. The question of intent was one of
fact to be determined by the jury, and the intent with
which the defendant entered the house was properly in-
ferred by them from the facts disclosed by the evidence.

It is, lastly, insisted that the court erred in overruling
the defendant's objection to questions propounded by
the prosecuting attorney to the defendant on cross-

examination. Conceding that he was cross-examined as to matters about which he was not examined in chief, and that the court erred in making the rulings complained of, the rulings were upon immaterial matters, which could not by any conceivable possibility have operated to the prejudice of the defendant, but, on the contrary, we are rather inclined to the opinion that the tendency was in the opposite direction.

Our conclusion is, that the judgment and order should be affirmed, and we so advise.

FOOTE, C., and VANCLIEF, C., concurred.

The COURT. — For the reasons given in the foregoing opinion, the judgment and order are affirmed.