[Crim. No. 1645.   Third Appellate District.—October 7, 1938.]

THE PEOPLE, Respondent, v. T. C. SWENSON, Appellant.

Howe, Hibbitt & Johnston and Downey & Downey for Appellant.

U. S. Webb, Attorney-General, and Gordon S. Hughes, Deputy Attorney-General, for Respondent.

THOMPSON, J.—The defendant was charged with burglary in entering the room of another person in the night-time with the intention of committing larceny. He was convicted of the crime of burglary of the first degree. From an order denying his motion for a new trial and from the judgment of conviction he has appealed.

It is contended the evidence fails to support the verdict and the judgment for the reason that it does not appear the defendant entered the room with the intention of committing larceny. It is also asserted the court erred in the admission of testimony and that the prosecuting officer was guilty of prejudicial misconduct in his argument to the jury.

We are of the opinion the evidence sufficiently proves that the defendant entered the room in question with the intention of committing larceny. The evidence shows that Paul Quinn was sleeping in room 19 on the second floor of the Lincoln Hotel in Sacramento, which hotel was operated by a Japanese named Joe Saki. Quinn was not acquainted with the defendant. He had never seen him before the night of the entry of his room. The room was entered at the unusual time of 3 o'clock in the morning. The defendant was not under the influence of liquor. Quinn asserted that he did not authorize the defendant to enter his room. He did so without rapping or giving previous warning. Quinn extinguished the light and went to bed at 9 o'clock on the previous evening. He folded his trousers and laid them over the back of a chair which stood a few feet from the doorway. The room was dark. Quinn was not sure that he locked the door when he went to bed. He was sound asleep when the defendant entered his room. When he awoke, after the defendant had entered the room, the trousers were found on the seat of the chair. They had been removed from the back where he left them. The evidence indicates that no property was stolen. Two young men named Finkel and Proulx occupied an adjoining room on the same floor of the hotel. About 3 o'clock in the morning they heard the creaking of the boards in the hallway and ''someone trying on the door'' of Mr. Quinn's room. They arose and peeking from the door of their own room they saw the tail of a coat disappear in the doorway of Quinn's room. They rushed after the prowler and found the defendant standing near the chair in Quinn's room a few feet from the doorway. It is reasonable to believe the defendant heard Finkel and Proulx coming and that he dropped the trousers on the seat of the chair. They seized the defendant and immediately took him to the proprietor's room, demanding that an officer be called and that the defendant be placed under arrest. The officer, Mr. Strazzo, soon arrived and took charge of the defendant. In the presence of the defendant and the officer, the proprietor charged the defendant with having been previously found in another man's room in that hotel under similar circumstances. The defendant failed to contradict that statement. Mr. Saki testified in that regard: ''I tell officer we caught this man twice in room.'' Again he said, ''We caught him [the de-

fendant] twice, . . . I lose him once before, but this time you better take . . . him.'' The officer testified regarding Saki's charge that the defendant had been previously caught in a room of the hotel, ''He stated [that] on a previous occasion he had caught the defendant in his room.''

The defendant did not take the witness stand at the trial in his own behalf, but it does appear that when he was first apprehended, he accounted for his presence in the room of Mr. Quinn by saying that he was looking for a friend by the name of Giminotti. It is true that a man by that name once occupied a room in that hotel. But he had not been there for two months prior to the time of the burglary, and his room was number 63 on the third floor of the building. Giminotti never roomed on the same floor where Quinn's room was located.

■ The circumstances warranting the jury in finding that the defendant entered the room with the intention of committing larceny are that while he was sober and in his right mind he gained admission to the room of a total stranger to him at the unusual hour of 3 o'clock in the morning without permission and without announcing his intention of so doing by rapping or otherwise. The room was in darkness and Mr. Quinn was asleep. His trousers were removed from the back of the chair and were found thrown upon the seat. The defendant was taken by surprise and apprehended before he had an opportunity to rifle the pockets of the pants. It is reasonable to assume that he took the trousers from the back of the chair and that he heard Finkel and Proulx coming down the hall and hastily threw the pants down on the seat of the chair. He had been previously caught by the proprietor in another room of the house where he was evidently searching for plunder. When he was accused of that fact he failed to deny or explain the charge. His pretended friend, Giminotti, had not lived in that hotel for two months, and he never occupied a room on the same floor on which Quinn's room number 19 is located. These circumstances may not be reasonably accounted for on any other hypothesis than that of the guilt of the defendant. ■ Upon a charge of burglary the intention with which an accused person enters the room of another individual without permission at an unusual hour of the night must be determined by the jury. But where the circumstances of a particular case and the ·

conduct of the accused person reasonably indicate that his purpose in doing so is to commit larceny, a verdict of guilty of the crime of burglary will not be disturbed on appeal. (*People* v. *Soto,* 53 Cal. 415; *People* v. *Winters,* 93 Cal. 277 [28 Pac. 946]; 4 Cal. Jur. 745, sec. 27; *Vickery* v. *State,* (Tex.) Ann. Cas. 1913C, note, p. 519.)

■ It is immaterial that the witness, Proulx, who signed the original complaint charging the defendant with burglary and who testified against him at the preliminary examination was not present at the trial. He was accompanied by his roommate, Finkel, when the defendant was apprehended in the room of Quinn. Finkel saw and heard the entire affair and testified to the circumstances in full at the trial. The defendant did not take the witness stand to contradict any statement which was made. The prosecuting officer was unable to locate the witness Proulx at the time of the trial. His associate testified that Proulx had been seeking work on a farm. He did not know where he had gone. The transcript of evidence which was taken at the preliminary examination was not offered at the trial. The absence of Proulx at the trial was not material. It does not appear that his presence would have benefited the defendant. No application for a continuance on account of his absence was made at the outset of the case.

■ The court did not err in overruling defendant's motion to strike out a statement made by the proprietor of the hotel in the presence of the defendant and the officer who made the arrest, as follows: "I tell officer we caught this man twice in room, and first I lose him, and that twice he wears good coat, good overcoat, and first time I didn't doubt him, and Proulx tells me you better call officer, *because he is searching my room.*"

On motion of the defendant the portion of the foregoing statement with reference to what Proulx told the witness was first stricken out as hearsay evidence. Then upon further inquiry the witness again stated: "Well, I tell officer I caught—we caught him twice, so I thought I lose him once before, but this time you better take with him, that is what I say." There was no objection to the question which elicited the last statement. Nor was there a motion to strike it from the record. The appellant is in error in asserting that the preceding statements were not made in the presence of the

defendant. The following testimony leaves no doubt the statements were made in the immediate presence of the defendant: "Q. And what did you tell the officer? . . . A. Just I talk to the man over here. . . . Q. And the defendant was right beside you? A. Yes sir. . . . Q. That is what you said in the presence of the officer? A. Yes. Q. And in the presence of the defendant? A. Yes. . . . Q. And while you were saying all these things to the officer, did this defendant say anything? A. No, just he laughing, that is all."

The district attorney was not guilty of prejudicial misconduct in commenting in his argument to the jury upon the defendant's failure to take the witness stand and either explain or deny the evidence which was adduced against him. Since the amendment to section 1323 of the Penal Code in 1935, the district attorney is specifically authorized to comment upon that failure. (Sec. 1323, Pen. Code; *People* v. *Pratt,* 26 Cal. App. (2d) 618 [80 Pac. (2d) 87].)

Nor was the district attorney guilty of prejudicial misconduct in otherwise arguing the cause to the jury. We are of the opinion the challenged statements which the district attorney made to the jury in the course of his argument merely amount to his valid construction of evidence which was adduced at the trial. In no instance to which we are referred did the attorney for the defendant formally object to statements of the district attorney and ask the court to direct the jury to disregard them. In one instance, in reply to a general assertion on the part of defendant's attorney, that the statement of the district attorney was not in accordance with the evidence, the court of its own motion directed the jury to disregard it. The defendant, therefore, waived his objections to the alleged prejudicial statements by failing to assign them as prejudicial and by failing to ask the court to strike them from the record and direct the jury to disregard them. (*Rogers* v. *Foppiano,* 23 Cal. App. (2d) 87, 94 [72 Pac. (2d) 239].)

The chief objection to such statements which the defendant assigns as error for the first time on appeal has reference to the evidence heretofore quoted in which the statement was made in the immediate presence of the defendant that he had been previously caught in the same building "searching" another room. In commenting to the jury on that statement of the evidence the district attorney said, "This man stood

mute when he was accused of being in another room.'' That seems to be a fair comment on the defendant's failure to deny the charge. But defendant's attorney failed to assign it as error, and he failed to ask the court to strike it from the record and to charge the jury to disregard it. All that the attorney said regarding that statement was: ''I submit there isn't a single word of evidence that he was in another room, or that he was in the hotel.''

It is true that the evidence does not specifically charge him with having been caught ''in another room of that hotel''. But the clear inference is that he was charged with having ''searched'' another room in that hotel. The incident does not constitute prejudicial misconduct, and the objection on that ground was waived by failure to assign it as such.

The judgment and the order are affirmed.

Pullen, P. J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on October 22, 1938, and an application by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on November 3, 1938.