[Crim. No. 5423.   Second Dist., Div. One.   Jan. 17, 1956.]

THE PEOPLE, Respondent, v. CHARLES CARROLL HENDERSON, Appellant.

Charles Carroll Henderson, in pro. per., and William Bronsten, under appointment by the District Court of Appeal, for Appellant.

Edmund G. Brown, Attorney General, and William E. James, Deputy Attorney General, for Respondent.

FOURT, J.—The defendant was charged in an information with the crime of burglary, a felony, in violation of section 459 of the Penal Code, and with a prior robbery conviction.

The defendant entered a plea of not guilty to the charge, and denied the prior conviction. At the time of the trial, however, he admitted the prior conviction, as alleged in the information.

The defendant declined a court-appointed attorney, although the public defender, who had theretofore been appointed, announced that he was ready to proceed with the case in defendant's behalf. The defendant represented himself throughout the trial of the case. A verdict of guilty of burglary in the first degree was returned by the jury. Defendant made a motion for a new trial which was denied, and he was sentenced to the state prison for the term prescribed by law.

Appellant requested this court to appoint counsel to represent him in this appeal and counsel was so appointed.

The following facts appear from the evidence. In 1954, John A. Hendricks, a retired geologist, occupied a house near Las Palmas and Milner Streets, in the county of Los Angeles. On the night of December 24-25, 1954, he came home about 12:30 o'clock a. m. and went to bed. He went to sleep but was awakened sometime thereafter by a noise in another room of the house. He got up and observed a light under the living room door. The police were called and as they arrived Hendricks saw that the living room light had been turned out. Later he saw a flashlight in the kitchen and someone near the ice box. On the kitchen floor there was scattered glass from a broken window. The police searched the house and found the defendant hidden under a bed in a bedroom other than the one occupied by Hendricks. Some meat and bread previously located in the ice box were found under the bed where the defendant was hiding. Hendricks had never seen the defendant before, and had not given him, nor anyone else, permission to enter his home.

R. P. Chamberlain, a police officer, testified that he received the call from Hendricks for police assistance at about 1:35 a. m., and that he with Officer Twoomey, proceeded to the home of Hendricks. Officer Chamberlain discovered the defendant under the bed and directed him to come out, and the defendant complied. The defendant at first refused to disclose to the officers his address. Officer Chamberlain testified that at the time of the arrest he could smell liquor on the defendant's breath and that the defendant seemed to be in an irrational state of mind.

The defendant testified that he had been watching the house deliberately to see if anyone went in or out of the house. He further stated that on the night of December 24, 1954, he had left work earlier than usual and had gone to the house of Hendricks "without thinking of what I was doing, or the consequences." He stated further that he had searched for an entrance, climbed over a gate, broken the kitchen window and climbed through the hole thus made. He admitted going to the ice box, prowling through the house and returning to the ice box to get something to eat. He heard voices and thereupon ran to a bedroom to hide. Defendant claims that he was drunk. He testified that he told the officers, "My curiosity had overwhelmed me." Defendant admitted that

he had no trouble in walking from the bedroom to the police car. He also admitted having been convicted of a felony, robbery, in California in 1950. Defendant further testified, ''. . . from the first to the last I have never denied entering the house. I have never denied taking any food. But I have denied that my intent was to commit theft, although the theft was committed. . . . I have denied that theft was intended.''

Appellant first contends that the evidence is insufficient as a matter of law to sustain the conviction. It is true that it was entirely within the circle of possibilities that the jury could have believed the defendant's story and acquitted him. It is also true that the trial judge could have granted the defendant's motion for a new trial. However, from the verdict and the ruling on the motion for a new trial, it is apparent that none of the jurors nor the trial judge believed the defendant's story.

It does not appear from a reading of the entire record in this case that there was no hypothesis whatever upon which the jury could support a conclusion of guilt.

■ ''The rule applicable where there is evidence, circumstantial or otherwise, that a crime has been committed and that the defendant was the perpetrator thereof, has been many times reiterated by the reviewing courts of this state as follows: The court on appeal 'will not attempt to determine the weight of the evidence, but will decide only whether upon the face of the evidence it can be held that sufficient facts could not have been found by the jury to warrant the inference of guilt. ■ For it is the function of the jury in the first instance, and of the trial court after verdict, to determine what facts are established by the evidence, and before the verdict of the jury, which has been approved by the trial court, can be set aside on appeal upon the ground' of insufficiency of the evidence, 'it must be made clearly to appear that upon no hypothesis whatever is there sufficient substantial evidence to support the conclusion reached in the court below. The determination of a charge in a criminal case involves proof of two distinct propositions: First, that the offense charged was committed, and second, that it was perpetrated by the person or persons accused thereof. . . . We must assume in favor of the verdict the existence of every fact which the jury could have reasonably deduced from the evidence, and then determine whether such facts are sufficient to support the verdict.' ■ If the circumstances reasonably justify the verdict of the jury, the opinion of the

reviewing court that those circumstances might also reasonably be reconciled with the innocence of the defendant will not warrant interference with the determination of the jury. (*People* v. *Perkins,* 8 Cal.2d 502 [66 P.2d 631] ; *People* v. *Tom Woo,* 181 Cal. 315 [184 P. 389] ; also *People* v. *Green.* 13 Cal.2d 37 [87 P.2d 821] ; *People* v. *Latona,* 2 Cal.2d 714 [43 P.2d 260] ; *People* v. *Tedesco,* 1 Cal.2d 211 [34 P.2d 467] ; *People* v. *Bresh,* 33 Cal.App.2d 161 [91 P.2d 193] ; *People* v. *Wilson,* 33 Cal.App.2d 194 [91 P.2d 207].)'' (*People* v. *Newland,* 15 Cal.2d 678, 681-682 [104 P.2d 778].)

Appellant also contends that the testimony indicates that there is more than a reasonable doubt that there was no intent to steal in committing the alleged burglary. ▪ The test on appeal is whether there is substantial evidence to support the conclusion of the trier of fact. It is not whether guilt is established beyond a reasonable doubt. (*People* v. *Daugherty,* 40 Cal.2d 876, 885 [256 P.2d 911].) Appellant himself testified, in substance, that he broke the window of the house and that he entered through the hole made by the breaking; that such breaking and entering was during the nighttime. He contends, however, that he had no intent to commit a larceny, or any felony, and therefore was not guilty of the alleged burglary. ▪ True it is that the existence of such an intent, at the time the entry was made, was necessary in order to sustain the conviction of burglary. ▪ However, this element is rarely susceptible of direct proof and must usually be inferred from all of the facts and circumstances disclosed by the evidence. When the evidence is sufficient to justify a reasonable inference that such intent existed, the verdict may not be disturbed. (*People* v. *Smith,* 84 Cal.App.2d 509, 512 [190 P.2d 941].) ▪ There is ample evidence, from what has already been related, to warrant the belief and conclusion that the defendant entered the house with the intent to commit larceny. (*People* v. *Kittrelle,* 102 Cal.App.2d 149, 156 [227 P.2d 38] ; *People* v. *Winters,* 93 Cal. 277, 282 [28 P. 946] ; *People* v. *Swenson,* 28 Cal.App.2d 636, 639-640 [83 P.2d 70].) ▪ Indeed, burglarious intent could be inferred from the forcible and unlawful entry alone. (*People* v. *Fitch,* 73 Cal.App.2d 825, 827 [167 P.2d 211] ; *People* v. *Martone,* 38 Cal.App.2d 392 [101 P.2d 537] ; *People* v. *Winters,* 93 Cal. 277 [28 P. 946].)

▪ Appellant asserts further that he was drunk and therefore could not have formulated the necessary intent. A com-

plete answer to this contention is found in Penal Code, § 22, which is as follows:

"Drunkenness no excuse for crime: When it may be considered. No act committed by a person while in a state of voluntary intoxication is less criminal by reason of his having been in such condition. But whenever the actual existence of any particular purpose, motive, or intent is a necessary element to constitute any particular species or degree of crime, the jury may take into consideration the fact that the accused was intoxicated at the time, in determining the purpose, motive, or intent with which he committed the act."

The judgment is affirmed.

White, P. J., and Doran, J., concurred.