[Crim. No. 3903.    First Dist., Div. Two.    Oct. 11, 1961.]

THE PEOPLE, Respondent, v. RICHARD L. MASSEY, Appellant.

Roger Justice Fleischmann, under appointment by the District Court of Appeal, for Appellant.

Stanley Mosk, Attorney General, Arlo E. Smith and Robert R. Granucci, Deputy Attorneys General, for Respondent.

KAUFMAN, P. J.—By an information dated August 9, 1960, the appellant, Richard L. Massey, was charged with the burglary (Pen. Code, § 459) of an apartment at 620 Jones Street, San Francisco, on May 2, 1960; and with two prior felony convictions in Iowa. He admitted the prior convictions and entered a plea of not guilty. A jury found him guilty of burglary in the first degree and the court sentenced him for the term prescribed by law, and decreeing that the sentence was to run concurrently with any prior incompleted

sentence. On this appeal from the judgment of conviction entered on the verdict and the order denying his motion for a new trial, appellant argues that: (1) the evidence is insufficient to sustain the judgment; (2) the evidence relating to another burglary of which he was acquitted was erroneously admitted; (3) the jury was erroneously instructed on the subject of entry; and (4) it is necessary that he be remanded to the Iowa authorities in order to obtain the benefit of the concurrent aspect of his sentence.

The record reveals the following facts: About 4:30 a. m. on the morning of May 2, 1960, Mrs. Sarah Finley, who lived alone in a one-room apartment, was awakened when she felt ''a terrific jerk.'' She saw a Negro man hovering over her face and screamed. The intruder hurried to the open window, leaped out and ran off. Mrs. Finley took a pill for her heart condition and telephoned for help. The police arrived and discovered that $13 was missing from her purse, as well as a few other small items from the apartment. A large rectangular piece had been cut out of the sheet on Mrs. Finley's bed, probably with the scissors on the nearby table. Later the same day, Mrs. Finley's apartment was dusted for latent fingerprints by an officer from the crime laboratory. A fingerprint was found on the inside of the window in Mrs. Finley's room and a knife outside the window.

Mrs. Finley had lived for several years in the apartment on the first floor of the Gaylord Hotel at 620 Jones Street in San Francisco. Her apartment had only two windows which overlooked the porch and the hotel next door. On the prior evening, May 1, 1960, she retired about 10 p. m.; as the night was very warm, she opened both windows, locked them with the chain, and covered herself only with a sheet.

The above occurrence remained unsolved for several weeks. About 3 a. m. on the morning of May 26, 1960, Elsie Cox, who lived alone in a two-room apartment at 757 Sutter Street, awoke and in the large mirror facing her bed, saw the reflection of a man entering the living room where she slept. She could see him very clearly as the living-room window extended almost the entire wall and overlooked the brightly lit Trader Vic's parking area next door. The venetian blinds on the window were down but open. She watched the prowler creep around her bed, and noticed that he kept a white cloth over his hand as he flashed a light into the closet and took a leisurely survey. He then turned and lifted up the pillow next to hers and pushed his hand under it. Then he straightened up, pro-

ceeded to the end of the bed, and the other side of the room. After he climbed out the kitchen window, she called the police. Later, she discovered that only a dish towel was missing, although several things were awry. Miss Cox's apartment was on the second floor; there were a fire escape and some pipes near the kitchen window. Shortly thereafter, a police officer saw the appellant walking down Post Street near Mason Street, and returned with him to Miss Cox's apartment. Miss Cox positively identified the appellant as the prowler at that time and at the later trial.

On June 9, 1960, while in custody on the Cox matter, the appellant was questioned about the Finley burglary. He denied being at Mrs. Finley's apartment on the morning in question and indicated he did not wish to make any further statements. On July 26, 1960, the preliminary hearing was held in Mrs. Finley's room because of her heart condition. At this time, Mrs. Finley testified that the prowler who was in her room on the morning of May 2 did not look like the appellant but was huskier, fatter and older. At the trial, she testified that the prowler looked very much like the appellant but admitted that she had observed the prowler for only about half a second and that it was so dark that she couldn't tell. She explained that the inconsistency in her identification was due to her nervousness at the preliminary.

The prosecution's expert witness testified that in his opinion, the latent fingerprint found on the window of Mrs. Finley's apartment was appellant's. The appellant took the stand, admitted the two prior felony convictions and being on parole from the Iowa Men's Reformatory for one of them. He testified that on May 1, he had gone to bed around 10 o'clock at the home of his sister and brother-in-law at 184 Hoff Street. The appellant's sister and her husband also testified that the appellant was in his bed on the night of May 1 at their home in the Ingleside district. It was also brought out at the trial that one week earlier, the appellant had been tried and acquitted of the Cox burglary.

The first argument on appeal is that the evidence is insufficient to support the verdict finding the appellant guilty of burglary in the first degree of Mrs. Finley's apartment. Appellant's argument centers on the fingerprint which was found on the inside of Mrs. Finley's window, and the fact that other fingerprints were also discovered but could not be identified. He argues that where there are at the scene of the crime fingerprints other than those identified as the defend-

ant's, and which are neither identified nor explained, the proof of defendant's prints is not sufficient to support a conviction, citing *State* v. *Minton* (1948), 228 N.C. 518 [46 S.E.2d 296], and *Anthony* v. *State* (1951), 85 Ga.App. 119 [68 S.E.2d 150]. However, in the cases cited by the appellant, the fingerprints in question could have been lawfully made. Appellant also cites *People* v. *Flores,* 58 Cal.App.2d 764 [137 P.2d 767]. In that case, however, a person other than the defendant admitted stealing the car on which the defendant's fingerprint was found and was identified by the victims. In the instant case, because of the location of the fingerprint on the inside of the window and the uncontroverted evidence that the appellant did not have Mrs. Finley's permission to be in the apartment, the jury properly inferred that the appellant's fingerprint could only have been impressed at the time the crime was perpetrated. The jury was not required to believe the defendant's theory that his fingerprint on the Finley window was made during the preliminary examination on July 26.

▆▆▆ Burglary may be proved by circumstantial evidence (*People* v. *Acosta,* 114 Cal.App.2d 1 [249 P.2d 316]).
▆▆▆ Fingerprints are the strongest evidence of identity of a person and under proper circumstances alone sufficient to identify the defendant as a criminal (*People* v. *Beem,* 192 Cal.App.2d 207, 211 [13 Cal.Rptr. 238]; *People* v. *Adamson,* 27 Cal.2d 478 [165 P.2d 3]). ▆▆▆ Here, in addition to the circumstantial evidence provided by the fingerprint, there was the direct evidence provided by the identification of the defendant by Mrs. Finley. The conflicts and inconsistencies between her testimony at the trial and at the preliminary examination were for the jury. On appeal, this evidence may be considered in support of the judgment (*People* v. *Barnett,* 159 Cal.App.2d 22, 29 [323 P.2d 96]). As there was uncontroverted evidence that the burglary occurred in an inhabited dwelling in the nighttime and a knife was found outside the window, the jury properly found the offense to be first degree burglary (Pen. Code, § 460). We think, therefore, that the evidence sustains the verdict finding the appellant guilty of burglary in the first degree.

▆▆▆ Appellant next argues that the evidence relating to the subsequent burglary of Miss Cox's apartment was not admissible because of his acquittal and because of its prejudicial effect. It is well established, however, that an acquittal does not prevent the admissibility of evidence concerning another wrongful act (*People* v. *Huston,* 156 Cal.App.2d 670, 671 [320

P.2d 175] ; see also *People* v. *Brown,* 168 Cal.App.2d 549 [336 P.2d 1] [defendant charged but not yet convicted], and *People* v. *Raleigh,* 83 Cal.App.2d 435, 442 [189 P.2d 70] [other charges dismissed at preliminary examination]), as conviction of the offense is not a prerequisite to the introduction of such evidence.

As stated in *People* v. *Brown, supra,* at pages 552-553: ''The ultimate fact to be proved is the defendant's guilt of the crime with which he is charged and not the other offense. The evidence of the other offense is admissible even though the defendant was not convicted of it, provided such evidence is relevant. Therefore, the rule concerning the admissibility of other offenses expressed in the *Raleigh* case must be limited to those circumstances where the proof is relevant and material to the crime for which the defendant is being tried.''

Appellant here argues that the Cox burglary is not relevant to the Finley burglary; the attorney general argues that the evidence was relevant and admissible as the Cox burglary was committed in the same neighborhood (about 2 blocks from the Gaylord Hotel where Mrs. Finley lived), was committed within the same month in the early hours of the morning, and both involved the use of a white cloth, Miss Cox's dish cloth, and by inference, the piece cut from Mrs. Finley's sheet.

The general rule of the admissibility of other criminal acts is stated in *People* v. *Sanders,* 114 Cal. 216, at page 230 [46 P. 153] :

''If the evidence of another crime is necessary or pertinent to the proof of the one charged, the law will not thwart justice by excluding that evidence, simply because it involves the commission of another crime. (*People* v. *Tucker,* 104 Cal. 440 [38 P. 195].) The general tests of the admissibility of evidence in a criminal case are: 1. Is it a part of the *res gestae*? 2. If not, does it tend logically, naturally, and by reasonable inference, to establish any fact material for the people, or to overcome any material matter sought to be proved by the defense? If it does, then it is admissible, whether it embraces the commission of another crime or does not, whether the other crime be similar in kind or not, whether it be part of a single design or not . . .'' (See also *People* v. *Peete,* 28 Cal.2d 306 [169 P.2d 924] ; *People* v. *McMonigle,* 29 Cal. 2d 730, 742 [177 P.2d 745] ; *People* v. *Sykes,* 44 Cal.2d 166, 170 [280 P.2d 769].) We think the evidence of the Cox burglary was pertinent to the issue of intent.

■ The third argument on appeal is that the trial court erroneously instructed the jury that the putting of a hand in an open window would constitute an "entry" for the purpose of burglary. The instruction is a correct statement of the law as in order to commit a burglary, it is not necessary that the defendant's whole body enter the building (*People* v. *Pettinger*, 94 Cal.App. 297 [271 P. 132]; see *People* v. *Allison*, 200 Cal. 404 [253 P. 318].)

Appellant argues, however, that the instruction erroneously assumes facts not in evidence, i.e., that any part of his body had entered through the window. There is no merit in this argument. Appellant's fingerprint was found on the inside of the windows which opened outward from the building, rather than moving up and down. The apartment was on the first story of the Gaylord Hotel. Although the window was open, it had been chained. Furthermore, the prosecution introduced evidence to show that directly below Mrs. Finley's window, a portion of the roof extended out for some 6-7 feet; about 10-11 feet below the roof, there was a walkway which led along the rear of the hotel and out to Jones Street. On the morning of May 2, the officers found an old divan against the wall on the sidewalk area in back of the building as well as several ladders along the south side of the building. There was thus sufficient evidence of an entry on which to base the above-mentioned instruction.

■ The final argument on appeal is that if the appellant's conviction is affirmed, it is necessary that he be remanded to Iowa so that he may have the benefit of the concurrent sentence here imposed. Appellant relies on *In re Stoliker* (1957), 49 Cal.2d 75 [315 P.2d 12], in which our Supreme Court granted a writ of habeas corpus to transfer the defendant from the custody of the warden of the state prison to the custody of the federal authorities in order that he might serve his sentence under his federal judgment of conviction and thereby gain the benefit of the provisions of his state judgment of conviction relating to the concurrent running of his sentence. Stoliker was arrested in California on a charge of robbery. Shortly thereafter, he was delivered by the state authorities to the federal authorities for trial on two federal charges involving the receiving of, and failure to register, a machine gun. He was convicted on two counts in the United States District Court; judgment was pronounced, imposing two five-year consecutive sentences and he was "committed to the Attorney General or his authorized representative for .

imprisonment.'' The federal judgment further provided ''. . . said sentences to run consecutively with any sentence imposed by any other court for any other offense.''

Stoliker was then redelivered to the state authorities, and arraigned in the state court on two counts of armed robbery. After pleading guilty, he was sentenced. At the proceeding for sentence, the trial judge was informed of the prior federal judgment of conviction, and the sentences on the two robbery counts were then ordered by the trial judge to run consecutively and the two consecutive sentences to run ''concurrently with any other sentence to which he is now subject.'' In granting the petition for habeas corpus, the Supreme Court said at pages 77 and 78:

''The attorney general further argues that *People* v. *Tucker,* 127 Cal.App.2d 436 [273 P.2d 934], holds that [Pen. Code] section 669 cannot apply to federal sentences. The trial court, however, had made no attempt there to make the sentences run concurrently, no evidence was introduced on the federal conviction, and no reasons were given by the court why state and federal sentences might not be made to run concurrently in a proper case. The opinion in that case is therefore not persuasive in the determination of the present case.

''While it has been indicated that the first sentence must be for an offense which would be a crime in California (*In re Sichofsky,* 201 Cal. 360, 364 [257 P. 439, 53 A.L.R. 615]), that requirement is met here since petitioner's unlawful possession of the machine gun would have rendered him subject to prosecution in the state court. (Pen. Code, § 12220.)

''Apparently under the federal rules the computation of time on a federal sentence begins to run only from 'the date on which [the prisoner] is received at the penitentiary, reformatory or jail for service of [the] sentence.' (*Zerbst* v. *McPike,* 97 F.2d 253, 254; see also 18 A.L.R.2d 511, 514-516.) Therefore petitioner's continued imprisonment in the state prison will compel his serving his state and federal sentences consecutively although the sole judgment of conviction under which he is now held in the state prison clearly provides that these sentences be served concurrently. We have therefore concluded that petitioner is entitled to have his custody transferred to the federal authorities . . .''

The attorney general here concedes that the mere fact that in the *Stoliker* case, the prior sentence was imposed by a federal court, while here it was a foreign state court, should not affect the defendant's rights to take advantage of the

concurrent aspect of his present sentence, in view of the announced policy of the law in favor of interpretations resulting in concurrent sentences. The attorney general, however, argues that there are several compelling reasons why the reasoning of the *Stoliker* case should not be followed here, namely, no statute authorized the procedure here sought, the State of California cannot retain jurisdiction over the defendant once he has been removed from the state, and finally, in the instant case, unlike *Stoliker,* there is no indication that the appellant, if not remanded, would be forced to serve his sentences consecutively. We cannot agree. The record of the proceedings of November 16, 1960, indicates that the trial court at the time of sentencing the appellant, knew that the appellant had violated his Iowa parole. On this appeal, the "hold order" attached to the defendant's supplemental opening brief has been made a part of the record by stipulation.

The law of Iowa, of which we are entitled to take judicial notice (*People* v. *Burns,* 181 Cal.App.2d 480 [5 Cal.Rptr. 301]), provided "The time when a prisoner is on parole or absent from the institution shall not be held to apply upon the sentence against the parolee if the parole be violated" (Code of Iowa, 1958, tit. XI, ch. 247.12). Thus, the appellant cannot receive credit on his Iowa sentence while serving his California term and receive benefit of the "concurrent" aspect of the sentence imposed by the court below. Also, having violated his parole, he is guilty of an additional felony in Iowa pursuant to Code of Iowa, 1958, title XI, chapter 247.28. Both offenses of which the appellant was convicted in Iowa, burglary with aggravation (Iowa Code of 1958, tit. XXXV, ch. 708.2) and receiving stolen property (Iowa Code of 1958, tit. XXXV, ch. 712.1, 712.2) are cognizable under section 460 and section 496 of the Penal Code, respectively. It appears to us, therefore, that all of the requirements of the *Stoliker* case have been met and we are constrained to follow that well-reasoned opinion.

The attorney general, however, citing *In re Whittington,* 34 Cal.App. 344 [167 P. 404], suggests that when the appellant becomes eligible for parole on July 17, 1962 (Pen. Code, §§ 461 and 3049), he can then, in accordance with the practice of the Adult Authority, request parole to Iowa to serve the sentence to which he is subject, and as a condition of such parole, waive extradition and consent to the retention of jurisdiction by California. Then, if Iowa should release him be-

fore the expiration of the California sentence, he can be returned to California (*In re Kimler,* 37 Cal.2d 568 [233 P.2d 902]; *In re Marzec,* 25 Cal.2d 794 [154 P.2d 873]), and the problem posed by *In re Whittington, supra,* avoided.

We note, however, that *In re Kimler* has apparently been overruled by *In re Bailleaux,* 47 Cal.2d 258 [302 P.2d 801], and that *In re Whittington* is of questionable authority (see *In re Fedder,* 143 Cal.App.2d 103, 111 [299 P.2d 881], and Pen. Code, § 1549), and predates certain statutes which can be invoked to solve the particular problem posed here (Pen. Code, §§ 1549, 11177, etc.). Thus, the questions here raised by the attorney general were not discussed by our Supreme Court in the *Stoliker* case. Furthermore, if the attorney general's suggestion were followed, the appellant would be serving the sentences *consecutively,* which is contrary to the policy of our law (as the attorney general here concedes). As indicated above, we are constrained to follow *In re Stoliker, supra.* Our view here is supported by the recent proceedings in *People* v. *Stoliker,* 192 Cal.App.2d 263 [13 Cal.Rptr. 437], and *In re McClure,* 192 Cal.App.2d 38 [13 Cal.Rptr. 298].

We also note that these matters were not raised below. Rather, the record indicates that the appellant's sentence was made concurrent at the suggestion of the prosecution. The conduct of the prosecuting attorney in remaining silent when the trial court announced the sentence amounted to an assent to the ruling (*People* v. *Burke,* 47 Cal.2d 45, 53 [301 P.2d 241]).

In view of the foregoing, the judgment of conviction and order denying the motion for a new trial are affirmed, with directions to the trial court that the appellant be remanded to the proper Iowa authorities when requested by said authorities.

Shoemaker, J., and Agee, J., concurred.