[Crim. No. 92. Fifth Dist. Jan. 23, 1964.]

THE PEOPLE, Plaintiff and Respondent, v. MACK TARANGO CORRAL, Defendant and Appellant.

J. M. Lopes for Defendant and Appellant.

Stanley Mosk, Attorney General, and Doris H. Maier, Assistant Attorney General, for Plaintiff and Respondent.

BROWN, (R.M.), J.—The district attorney of Tulare County filed an information charging appellant with two counts of the crime of burglary, first degree, in violation of section 459 of the Penal Code, to which appellant pled not guilty but did admit three prior felony convictions.

After trial by a jury finding the appellant guilty as

charged as to each count, a motion to set aside the verdict as to count 1 was denied, as was a motion for new trial; the court reduced the charge as to count 2 from first degree burglary to second degree burglary, and found the appellant to be a habitual criminal. Appellant filed a timely notice of appeal from the judgment of conviction as to both counts.

### Count 1—The Weinberg Burglary

On April 28, 1963, at approximately 11:30 p.m. Mr. and Mrs. Weinberg returned to their home in Tulare, prepared for bed, and Mrs. Weinberg left her purse which she had with her earlier that evening on a chair just inside her bedroom door. After falling asleep Mrs. Weinberg felt something touch her and on awakening, saw the silhouette of a man standing about 2 feet from her bed towards the door. She called to her husband who had gone to bed in a room adjacent thereto and thereupon the intruder ran from the house. Mrs. Weinberg heard the back door close. Mr. and Mrs. Weinberg then went outdoors to see whether the intruder could be found, and discovering nothing, returned to the house and found that the back screen door which opened inwardly had been broken from its hinges, and they testified that the door had not been in that condition previously. Mrs. Weinberg also found that her purse which had been left closed was now open and that a wallet and coin purse containing about $90 were missing. The police arrived shortly thereafter and their investigation disclosed a barefoot track on the screened porch as well as a fingerprint on the clasp of Mrs. Weinberg's purse. Two experts testified that the print found on the clasp was that of appellant's left thumb. Mr. and Mrs. Weinberg had not given permission to the appellant to enter their home.

### Count 2—The Kreider Burglary

On April 17, 1963, Mr. and Mrs. Kreider retired in their home shortly after 11 p.m. Before going to bed Mrs. Kreider had placed her purse containing curlers, stamps, payment books and about $15 on the drainboard beside the kitchen sink which was under a window of the type which opens both at the top and bottom. Through the window over the kitchen sink a person may view the closed-in back porch which contained an automatic washer and dryer and other laundry equipment. A partially screened door opened outside this porch and the washer was located directly under the kitchen window. The following morning Mrs. Kreider dis-

covered that her purse had been ransacked and was empty, part of the contents being found on the windowsill over the sink. The screen in the porch door was found to be torn at the corner. The police were notified and Lieutenant McGowan of the Tulare Police Department discovered two latent barefoot prints on the top of the washer immediately under the window. Two fingerprint experts positively identified the prints as those of appellant. As in the Weinberg case, the Kreiders were not acquainted with the appellant; nor had they given him permission to enter their home.

It is appellant's contention that there is no sufficient evidence to sustain the conviction as to each count, that the court erred in its ruling on the admissibility of the evidence, and prejudicial misconduct by the district attorney in the course of his argument to the jury.

We believe that the evidence was fully sufficient to support the conviction.

The elements of burglary are the entry of a building with the intent to commit grand or petty larceny or any felony therein. (Pen.Code, § 459.)

While appellant apparently concedes that there was an entry into the building, he questions the evidence regarding only one of the elements—intent. ▮ Intent, of course, is a subjective matter rarely susceptible of direct proof. Its existence must be inferred. (*People* v. *Henderson*, 138 Cal. App.2d 505, 509 [292 P.2d 267].)

▮ The intruder's intent to commit theft within the houses was amply shown by the secret and noiseless entry in an unusual manner at an odd hour of the night into the homes where he was not an invited guest, the thefts of property, and his sudden flight on being discovered in the Weinberg home.

The California Supreme Court stated in *People* v. *Soto*, 53 Cal. 415, 416: "... when a person enters a building through a window at a late hour of the night, after the lights are extinguished, and no explanation is given of his intent, it may well be inferred that his purpose was to commit larceny, ..." (See also *People* v. *Sturman*, 56 Cal.App.2d 173, 182 [132 P.2d 504]; *People* v. *Henderson*, *supra*, 138 Cal.App.2d 505, 509; *People* v. *Schwab*, 136 Cal.App.2d 280, 287-288 [288 P.2d 627].)

Appellant addresses his principal complaint to the evidence identifying him in his entry of these two homes. ▮▮ His fingerprints and footprints were found in highly

suspicious and unusual locations inside the houses at which he was unknown and to which he had not been invited. His *modus operandi* was identical. Mrs. Weinberg testified that she had seen his silhouette, which resembled appellant's. The appellant failed to take the stand to explain the evidence presented against him, and therefore, the jury was justified in concluding that the more adverse explanations were the more probable. (*People* v. *Adamson*, 27 Cal.2d 478, 489 [165 P.2d 3].)

The most convincing evidence consisted of fingerprints and footprints. ■ It is completely settled law that fingerprints are the strongest evidence of identity of a person. (2 Wigmore on Evidence, § 414, pp. 389, 390.)

The court said in *People* v. *Riser,* 47 Cal.2d 566, 589 [305 P.2d 1], that ''Fingerprint evidence is the strongest evidence of identity, and is ordinarily sufficient alone to identify the defendant.'' (See also *People* v. *Ang*, 204 Cal.App.2d 553, 555 [22 Cal.Rptr. 455].)

■ Bare footprints are as reliable an index of identity as fingerprints. Volume 28, American Law Reports Second, at page 1128, lists cases from jurisdictions holding bare footprints admissible on the same basis as fingerprints.

■ In the Weinberg burglary appellant's left thumbprint was found on the clasp of the purse from which the money was stolen. The purse had been left closed and was found open and empty shortly after Mrs. Weinberg had placed it there. This supports the inference that the print was placed on the purse clasp at the time of the burglary.

In *Stacy* v. *State,* 49 Okla.Crim. 154 [292 P. 885-887], appellant's fingerprints were found on the door of the burglarized safe and this was held to be ''a circumstance irresistibly pointing to his guilt.''

In the case of *People* v. *Wise,* 199 Cal.App.2d 57 [18 Cal. Rptr. 343], appellant's fingerprints were found on a roll of tape at the scene of the crime and the court stated at page 60: ''Here, the defendant's fingerprint was found on the tape which can be used as a burglary tool. As we recently pointed out in *People* v. *Beem,* 192 Cal.App.2d 207 [13 Cal.Rptr. 238], at page 211: 'It is well established that fingerprints are the strongest evidence of identity of a person and under proper circumstances alone sufficient to identify the defendant as a criminal. ...' '' (See also *People* v. *Ang, supra,* 204 Cal.App.2d 553, 555.)

■ In the Kreider burglary barefoot prints were dis-

covered on top of the washer and this evidence clearly justifies the inference that appellant stood on the washer, barefooted to eliminate noise, crawled through the kitchen window, and took the money.

A single fingerprint on or near some unusual means of access is sufficient to support a burglary conviction, as held in *People* v. *Rodis*, 145 Cal.App.2d 44, 46 [301 P.2d 886], and *People* v. *Massey*, 196 Cal.App.2d 230, 234 [16 Cal.Rptr. 402].

Because of the location of these fingerprints and footprints in our case, the jury could properly infer that such prints had been impressed there at the time the crimes were committed. (*People* v. *Massey, supra,* 196 Cal.App.2d 230, 234.)

Partial fingerprints and footprints are sufficient, and it is immaterial whether or not there was a complete print. The sole question is whether that print found is sufficient to enable the expert to identify the criminal.

Many California cases have affirmed convictions based on identification of a single fingerprint (*People* v. *Ang, supra,* 204 Cal.App.2d 553, 555; *People* v. *Wise, supra,* 199 Cal. App.2d 57, 60; *People* v. *Rodis, supra,* 145 Cal.App.2d 44, 46), or of a partial palm print (*People* v. *Buckowski,* 37 Cal.2d 629, 632 [233 P.2d 912]).

Here, two experts gave independent, unequivocal, and uncontradicted testimony that the prints were those of appellant.

Other factors in addition to the fingerprint and footprint evidence which is more than sufficient to support appellant's conviction, include Mrs. Weinberg's testimony as to the size of the intruder whose silhouette she observed, the method of the operation in the two burglaries was similar—the intruder being barefoot, the object being a woman's purse, contents taken and purse remained, and the intruder left in a hurried and destructive manner through a rear exit. It is very well settled that similarity of *modus operandi* is admissible to show a criminal's identity. (*People* v. *Peete,* 28 Cal.2d 306, 318-319 [169 P.2d 924].)

The appellant's failure to take the stand to explain this evidence of his guilt weighs against him. It is well settled in California by both constitutional provisions (Cal. Const., art.I, § 13) and case law that a defendant's failure to take the stand "... to deny or explain the evidence presented against him, when it is in his power to do so, may be con-

sidered by the jury as tending to indicate the truth of such evidence, and as indicating that among the inferences that may reasonably be drawn therefrom, those unfavorable to the defendant are the more probable." (*People* v. *Adamson, supra,* 27 Cal.2d 478, 489; *People* v. *Tostado,* 217 Cal.App.2d 713, 718 [32 Cal.Rptr. 178].)

In the *Adamson* case, *supra,* the burglar had entered the victim's home through a garbage compartment and his finger-prints were found on the door. The court stated at page 491: "The defendant could reasonably be expected to know whether or not he had handled the garbage door and if so, on what occasion. ... His failure to explain or deny this evidence by his testimony could have been considered by the jury as indicating that the evidence was true and that the inferences unfavorable to the defendant were the more probable."

To the appellant's contention that the district attorney's comments on the appellant's failure to testify regarding the print evidence being prejudicial misconduct in that the reasons for the complaint are that the comment regarded facts not in evidence and that the evidence concerned matters not within the appellant's knowledge, it must be said that in the light of the expert testimony the prints found in the homes were identified as those of appellant; and thus, this argument is fallacious and all of the facts with regard to how his fingerprints got on the purse or his footprints on the washer are entirely within the knowledge of the appellant and unexplained.

Appellant also contends that the trial court erred in admitting various exhibits showing the fingerprints and partial prints because there was no foundation laid.

"The burden is on the appellant in every case affirmatively to show error and to show further that the error is prejudicial; ..." (*Vaughn* v. *Jonas,* 31 Cal.2d 586, 601 [191 P.2d 432].) An examination of the record, however, shows that full and proper foundations were laid in each instance.

Material objects are admissible in evidence when relevant and when identified by one familiar with them. (Code Civ. Proc., § 1954; *People* v. *Westlake,* 134 Cal. 505 [66 P. 731].) The purse was relevant, being the object of the burglary, and the purse on which the appellant's print was found was completely identified by its owner, Mrs. Weinberg. With reference to the photographs of the clasp of the purse, the foundation was proper and detailed.

Mr. Justice Traynor, in *People* v. *Riser, supra,* 47 Cal.2d 566, 580, said of the foundation required for the admission of fingerprint evidence: ''Undoubtedly the party relying on an expert analysis of demonstrative evidence must show that it is in fact the evidence found at the scene of the crime, and that between receipt and analysis there has been no substitution or tampering [citations], but it has never been suggested by the cases, what the practicalities of proof could not tolerate, that this burden is an absolute one requiring the party to negative all possibility of tampering. [Citations.]''

Lieutenant McGowan testified that he took the purse from the Weinberg home immediately following the burglary, took it to the criminologist at the Fresno sheriff's office, that he remained there while the photographs were being taken of the fingerprint on the purse clasp, and that the photographer authenticated the photographs. As to the fingerprint and footprint cards, exhibits Nos. 13 and 14, these were the prints taken by the police after appellant's apprehension and the foundation requirements were met by Sergeant Dixon's testimony that he had taken them at Lieutenant McGowan's direction and by the lieutenant's identification of exhibits 13 and 14 as the resulting print cards. The only other print cards in evidence were exhibits 19 and 20 representing latent prints found on the top of the washer, and the requirements were again met by the testimony of Lieutenant McGowan who identified the cards as the prints he had taken. The other photographs in evidence were pictures of the burglary scenes and these were properly authenticated and identified by the residents of the two homes. (See *People* v. *Doggett,* 83 Cal. App.2d 405, 409 [188 P.2d 792].)

As to appellant's argument that the evidence against him was inherently improbable, it is sufficient to say that the very cases cited by appellant refute this contention. In *People* v. *Headlee,* 18 Cal.2d 266, 267 [115 P.2d 427], it was stated: ''To be improbable on its face the evidence must assert that something has occurred that it does not seem possible could have occurred under the circumstances disclosed. The improbability must be apparent; evidence which is unusual or inconsistent is not necessarily improbable.''

■■ Thus, we have come to the conclusion that the appellant's guilt is the only possible inference to be drawn from the evidence presented.

The judgment is affirmed.

Conley, P. J., and Stone, J., concurred.