[Crim. No. 14057.    Second Dist., Div. Four.    July 7, 1969.]

THE PEOPLE, Plaintiff and Respondent, v. ELROY C. LAMICA, Defendant and Appellant.

Elroy C. Lamica, in pro. per., and Rollyn Jon Habeck, under appointment by the Court of Appeal, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, and Thomas Kallay, Deputy Attorney General, for Plaintiff and Respondent.

KINGSLEY, J.—In 1957, defendant was found guilty of burglary in the first degree, in violation of section 459 of the Penal Code. A motion for a new trial was made and denied. The criminal proceedings were adjourned and sexual psychopathy[1] proceedings were instituted, as a result of which defendant was ultimately committed to Atascadero State Hospital for an indeterminate period. On February 3, 1967, a report from the superintendent and medical director of that hospital was received and filed. It reported, pursuant to section 5517, subdivision (b) of the Welfare and Institutions Code, that defendant had not recovered, that he had "reached

---

[1]Such was the statutory language in 1957 when defendant was committed. The terminology was changed in 1965 to the present phrase: "mentally disordered sex offender." (Cal. Stats. 1965, ch. 391, § 5.)

maximum hospital benefit'' and that he was a ''danger to society.''[2] On receipt of that report, the criminal proceedings were resumed, defendant was denied probation and was sentenced to state prison. He has appealed from the judgment so entered.[3] We reverse the judgment.

The facts may be briefly stated. On July 2, 1957, Mary DeMott came home from work at about 2:30 a.m. and went to bed. The window of her ground floor apartment was open. It had a screen on it and venetian blinds which were drawn and pulled shut. At about 3 a.m. Mrs. DeMott saw the silhouette of a man standing just outside the window. He removed the screen on the window and then quietly raised the blinds about 18 inches, using both hands. She observed one of his hands inside the room. After the blinds were raised she saw that his other hand was placed over the window sill. At this point Mrs. DeMott quietly told her daughter to go to the manager of the .apartment for help. After her daughter left Mrs. DeMott continued to watch the window. She then saw the man drop the blinds and move away from the window. She went to the window and saw him heading down the sidewalk toward the back of the building.

John Stark was the manager of the apartment. When Mrs. DeMott's daughter told him what was happening he went outside with his flashlight and pistol. He saw a figure running toward the rear of the building. He turned the beam of his flashlight on the figure and, as he did so, the man turned and he got a look at his face. At the time the man was about 15 feet away from him. The man failed to heed his commands to halt, even after he fired a shot, and he climbed over a wall at the back of the property and disappeared.

At a lineup held a week later, Stark indicated that defendant resembled the man he had seen running away from the apartment.

Defendant walked into General Hospital on the night after the incident at Mrs. DeMott's and asked to see a doctor. He was admitted to the hospital. The next morning Officer Weil talked to him in the psychopathic ward. Defendant told Weil

---

[2]It will be noted that the report, citing the code section above referred to, does not follow exactly the statutory language. However, the meaning is clear and no point was made in the trial court or here of the variation.

[3]Although, under the law as it stood in 1957, defendant could have appealed from the order denying a new trial motion, he is nevertheless entitled to raise trial errors on the appeal from the ultimate judgment. (*People* v. *Gonzales* (1968) 68 Cal.2d 467 [67 Cal.Rptr. 551, 439 P.2d 655].)

he was prowling around the Hollywood area early on the morning of July 2d. He went to an apartment house and saw a woman through a window. He was attempting to get in when he heard a man shout at him. He began to run and the man told him to stop or he would shoot. The man fired at him as he ran away. Upon being asked why he had attempted to get into the apartment, defendant indicated that he wanted "to talk to the woman or take something, whichever possessed him first." He told the officer that he had been in a school for retarded people and had been committed before to the hospital. He then stated that he thought it was best that he got it off his chest because "he was afraid he might be injured or he might injure someone else." In a later conversation, which apparently took place after he was taken into custody by Officer Weil, defendant denied that he had gone to the woman's apartment.

In his testimony defendant denied any involvement, stating that he was home in bed. He related that he decided to go to the hospital on the night of July 3d because he believed the police were watching him. On cross-examination, after indicating that Officer Weil got him all mixed up, defendant admitted that he made a statement to the officer but stated that he later changed it when he was taken to the police department. He was then asked:

"Q. Did you tell any of the doctors that you had been over to this apartment?

"A. At that time I was going to tell them, but I changed my statement.

"Q. In other words, you did tell the doctors too that you had been over to this apartment?

"A. Yes. But I changed my statement to the last doctor that talked to me."

Defendant's parents testified that he was home in bed on the night in question.

██ Despite defendant's assertion to the contrary, the evidence is amply sufficient to support his conviction. The matter of the credibility of witnesses was solely for the trial court sitting as the trier of fact. It chose not to believe defendant's alibi.

██ "The gravamen of a charge of burglary is the act of entry which must be accompanied by a felonious intent. ██ The existence of the requisite intent may be inferred from circumstantial evidence (*People* v. *Conley*, 220 Cal.App.

2d 296, 299 [33 Cal.Rptr. 866]), and the crime of burglary·is complete when an entry with the essential intent is made, regardless whether the felony planned is committed or not (*People* v. *Mitchell,* 239 Cal.App.2d 318, 328 [48 Cal.Rptr. 533]).'' (*People* v. *Walters* (1967) 249 Cal.App.2d 547, 550 [57 Cal.Rptr. 484].) ▮ It is not necessary that defendant's whole body enter the building; ". . . the putting of a hand in an open window would constitute an 'entry' for the purpose of burglary." (*People* v. *Massey* (1961) 196 Cal. App.2d 230, 236 [16 Cal.Rptr. 402]; *People* v. *Walters* (1967) 249 Cal.App.2d 547, 551 [57 Cal.Rptr. 484].)

▮ The evidence here shows that defendant made an unauthorized entry into the apartment. Even without considering his extrajudicial statement as to his intent at the time, the surrounding circumstances—*i.e.* the manner of the entry, the odd hour and the sudden flight upon being discovered—support the inference that the required intent to commit theft or a felony was present. (See *People* v. *Corral* (1964) 224 Cal.App.2d 300, 304 [36 Cal.Rptr. 591]; *People* v. *Jordan* (1962) 204 Cal.App.2d 782, 786-787 [22 Cal.Rptr. 731].)

Neither do we find merit in defendant's assertion that the corpus delicti of the crime was not proven without resort to his extrajudicial statement. ▮ The corpus delicti may be established by circumstantial evidence. (*People* v. *Jordan, supra* (1962) 204 Cal.App.2d 782, 786-787.) ▮ As above indicated, there was proof of an uninvited entry under circumstances which support the conclusion that a burglarious intent was present. Nothing more was required.

▮ However, we must reverse the judgment because of the use of defendant's statement to Officer Weil. The events, and the trial, took place long before the decisions in *Escobedo* v. *Illinois* (1964) 378 U.S. 478 [12 L.Ed.2d 977, 84 S.Ct. 1758], and *People* v. *Dorado* (1965) 62 Cal.2d 338 [42 Cal. Rptr. 169, 398 P.2d 361]. Understandably, the record contains no hint that the warnings required by those later cases had been given to defendant by Officer Weil, nor is there anything to indicate that defendant's conversation with the officer was originated by him rather than by the officer. Under those circumstances, the admission of his statement—which amounted to a confession—was error. Since the case—by virtue of the present appeal—was pending after the date of those decisions, the error may still be raised. (*People* v. *Kellum* (1969) 71 Cal.2d 352 [78 Cal.Rptr. 501, 455 P.2d 429] (decided June 18,

1969). ▮ The result is that the judgment must be reversed; and, since his subjection to the mentally disordered sex offender proceedings depends on a valid conviction, the orders made therein must be vacated. (*People* v. *Kellum, supra,* 71 Cal.2d 352, 355.)

The judgment of conviction is reversed; the orders of commitment made in the sexual psychopathy proceedings are vacated.

Files, P. J., and Jefferson, J., concurred.