[Crim. No. 3754.   Third Dist.   Jan. 11, 1966.]

THE  PEOPLE,  Plaintiff  and  Respondent,  v.  ALBERT VINCENT  MITCHELL,  Defendant  and  Appellant.

Charles Y. Boeggeman, under appointment by the District Court of Appeal, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, Doris Maier, Assistant Attorney General, Raymond Momboisse and Roland Hall, Deputy Attorneys General, for Plaintiff and Respondent.

VAN DYKE, J.*—This is an appeal from a conviction of burglary in the second degree. The scene of the crime was Suzie's Dress Shop in Sacramento. The store was locked on the night of May 4, 1964, and was entered during the night. When one of the owners arrived at the store the next morning, she described the scene as follows: ". . . there was a lot of our merchandise which was strewn around on the sidewalk in front of the store and to the rear of the store. Underpants were draped on the door, there was a dress or two parts of one dress was out in front, and the entire store on the inside was just completely disarray. There were—there was lingerie, dresses, swimsuits, just one end to the other. It was just absolutely havoc." It appeared that the back window had been broken to effect entry. It had been installed so as to swing inward, leaving an opening through which a person could enter and appellant's fingerprints were found on the inside of the glass. A mannequin, which had been in the front window of the store, had been thrown down and torn apart and the dress which had been on it was missing. (This is the only article shown to have been taken.) Several pairs of panties were found with the crotch ripped out and a black dress was ripped and had "a foreign matter all over it." A slip was also found with "foreign matter" on it. The cash drawer, which contained from $50 to $100 in cash, was not disturbed, although it was readily accessible to one searching for money. Several days after the entry into the store, an officer searched the apartment of appellant but did not find the missing garment there.

During the presentation of the prosecution's case in chief a San Jose policeman was sworn and testified over the objection of appellant to a statement that was made to him by appellant in July of 1962 concerning the burglary of a Stilson Brothers Cleaners establishment in Sacramento. The officer testified that the statement was voluntarily made and

---

*Retired Presiding Justice of the District Court of Appeal sitting under assignment by the Chairman of the Judicial Council.

was made at the police station in San Jose. He testified that while he was employed as a city patrolman and on June 5, 1962, he talked to appellant about a burglary of Stilson Brothers Cleaners located in Sacramento; that appellant identified it as the establishment where he used to work; that he said he lived across the street in a hotel and that from his room he could see an open window on the second story level of the building; that he entered by that window and removed eight dresses from the building; that he selected dresses with silk linings; that he had discussed with the witness on an earlier occasion a problem he had requiring him to have, preferably, a silk slip to use as a symbol when he masturbated; that he had made the entry at night; that he "confessed" stealing the dresses. On cross-examination the witness testified that appellant said the only garments he had ever taken for the purpose of self-gratification were silk slips but that in saying that he had had reference to thefts from clotheslines; that appellant said that during the week after he had taken dresses from the cleaning establishment and while it was open he had returned the dresses by throwing them in the back door. The witness further said that appellant admitted taking articles from another establishment while it was open for business with the purpose of getting himself placed in a mental institution because he wanted help from a mental facility.

Before this evidence was received there had been a conference between the court and counsel on both sides relative to its admissibility. The prosecuting attorney made an offer of proof, stating in substance the testimony which we have related above and which was admitted later. Defense counsel objected that the testimony would be irrelevant and immaterial so far as the offense charged was concerned; and that it did not fit the common plan, scheme, or design rule. The prosecutor replied that it was introduced to show intent, identity and motive, citing *People* v. *Sykes,* 44 Cal.2d 166 [280 P.2d 769], as authority in support of his position. The trial judge announced he was going to allow the testimony to come in, saying he had spent some time prior to the conference on the question of admissibility of evidence of other crimes. He quoted from *People* v. *Henderson,* 60 Cal.2d 482, 494-495 [35 Cal.Rptr. 77, 386 P.2d 677], as follows: " 'It is settled in this state that except when it shows merely criminal disposition, evidence which tends logically and by reasonable infer-

ence to establish any facts material for the prosecution, or to overcome any material fact sought to be proved by the defense, is admissible although it may connect the accused with an offense not included in the charge.' '' The court stated that the proposed evidence was relevant to the issues for which it was to be received, that is, intent, identity and motive, and then, again referring to *Henderson,* the court stated: ''It [the opinion] goes on to say, and this, of course, is the thing that gives me a little pause on this: 'Although evidence of prior offenses carries with it the risk that its probative value may be outweighed by its possible prejudicial effect, the evaluation of this risk rests in the sound discretion of the Trial Court.' . . . from what I have heard so far, I don't think that the probative value here will be outweighed by the possible prejudicial effect and, accordingly, I am going to admit the testimony over your objection, . . .'' The receipt of the testimony of the police officer is now charged as prejudicial error, requiring reversal.

First, it is to be noted that the objections made at the conference were limited to the questions of relevancy and materiality and, as made, the objections were not good. It is obvious from the testimony of the proprietor that this was no ordinary burglary wherein the burglar enters with intent to enrich himself by stealing money or property. Usually the cash register would have received attention and its contents so easily accessible would have been taken. Usually no destruction or disarray of property such as occurred here would have been indulged in. Ordinarily, a burglar would not have destroyed or scattered the goods in the store but would have taken what he wanted and departed. As the witness said, the condition in which the store and the goods therein had been left was simply ''havoc.'' And that there was at least another prime motive other than theft for the entry was likewise obvious from the ripping out of parts of intimate feminine apparel and from the ''foreign matter'' found on some of the garments. In fact, it is conceded by the prosecution that self-gratification was a prime motive for the entry into the store, but it was the People's theory there was a second prime motive and that it was theft, that is, the intent of the entry was to take intimate feminine apparel for future use for self-gratification. It was so argued to the jury. The defense, while not contending that appellant had not entered the store, asserted throughout and argued to the jury that he had had no intent to steal; that the other motive was

the only motive he had for entering the store, and that since the entry was not made with intent to commit theft or any felony, he was not guilty of burglary, the only crime with which he was charged.

As the record stands, no proper objection having been made, and the evidence being relevant and material as showing identity, motive and intent, the evidence was admissible so far as the specific objections made be concerned, and we think the trial court in this aspect properly ruled that the probative value outweighed the possible prejudicial effect of the evidence. Hence there was no abuse of discretion in allowing the testimony to come in unless it was inadmissible for another reason.

Appellant argues that error was committed in admitting the statements because there was no independent proof of the corpus delicti of the other offense. It is true that extrajudicial admissions and confessions are not admissible to prove prior offenses without proof *aliunde* that such crimes have been committed. (*People* v. *Hamilton,* 60 Cal.2d 105, 129-130 [32 Cal.Rptr. 4, 383 P.2d 412]; *People* v. *Hines,* 61 Cal.2d 164, 174 [37 Cal.Rptr. 622, 390 P.2d 398].) But this objection was not made. "Where inadmissible evidence is offered, the party who desires to raise the point of erroneous admission on appeal must *object* at the trial, *specifically* stating the grounds of his objection, and directing the objection to the *particular evidence* which he seeks to exclude." (Witkin, Cal. Evidence (1958) § 700, p. 732.) Furthermore, the admissibility of the statements was the subject as we have noted of a special conference, so that there was ample opportunity to make whatever objections counsel desired to make. It also appears that on motion for new trial, where this same point was made, the People replied, and there was no denial of the truth of the assertion, that proof of the corpus delicti was available and at hand during the trial, but that in the absence of specific objection calling for such proof it was omitted. We cannot ascribe error at the trial because proof *aliunde* of the corpus delicti of the previous crime was not made.

Appellant contends that the trial court committed error in failing on its own motion to give the usual instruction about oral admissions, that they should be viewed with caution, referring here again to the testimony of the police officer concerning appellant's statements as to other crimes.

Here the People concede that the trial court erred in failing to give that instruction. However, the People argue that there was no miscarriage of justice, no reasonable probability that a result more favorable to the appellant would have been reached if the cautionary instructions had been given. (*People* v. *Watson,* 46 Cal.2d 818, 837 [299 P.2d 243].) It is pointed out that only one witness testified to oral admissions; that this witness, a police officer, had written the oral admission down in an offense report, and reviewed the report before testifying, had produced it at trial, and the appellant had used the report on cross-examination; that there were no obvious conflicts or apparent inconsistencies in the testimony; that the testimony was clear, concise and consistent and the witness not hostile; that the oral admissions concerning a prior offense were made before the offense charged was committed and were not direct evidence of any element of the crime charged. We agree that the error was not prejudicial. In addition to the reasons just stated as advanced by the People, we note the evidence is uncontradicted that appellant did enter the store through the back window, did commit "havoc" with the goods therein, did use feminine apparel for his sexual gratification while in the store and that, though later not found in his apartment, a woman's garment was missing, arguably taken for future sexual gratification. We note also the argument the People addressed to the jury: "Our theory, and I will express it for you right immediately to let you know exactly where we stand and what our position is—he went in there for a dual purpose. He went in there for the purpose of doing whatever he wanted to do with those dresses and with the ladies' panties in there; but he also wanted to get some stuff to go on his little rampage at a later time. So he went in there with a dual purpose; and, as long as he went in there with the intent to commit theft, then he committed burglary. . . . And the whole question is did he have the intent to commit theft? And as long as that was one of his intentions, then it is sufficient to satisfy the requirements of the commission of a burglary." We note further that appellant, in defense, entered into evidence a document showing that he had once been committed to Atascadero State Hospital for a nine-day observation as a sexual psychopath. We hold appellant was not prejudiced by the court's failure to give on its own motion the cautionary instruction.

On motion for new trial, and again on appeal, appellant has claimed that his constitutional rights have been violated by the reception in evidence of the statements he made to the San Jose police officer. No objection upon this ground was made at the trial, even though as noted an extensive conference had been held as to the admissibility of these statements with the court and counsel on both sides present. Preliminarily we note that, although the officer stated that appellant in the interview had confessed to having burglarized the Sacramento cleaning establishment's place of business, this was not a confession of the crime charged against him at trial but does amount to incriminating statements in that the statements were admissible in proof of the charge being tried. Since the statements were made in June 1962 before *Escobedo* v. *Illinois* (1964) 378 U.S. 478 [84 S.Ct. 1758, 12 L.Ed.2d 977], we may, under the authority of *People* v. *Dorado*, 62 Cal.2d 338 [42 Cal.Rptr. 169, 398 P.2d 361], assume that if the accusatory stage had been reached and the officer was engaged in a process of interrogations lending itself to eliciting incriminating statements, that appellant was not then advised of his right to counsel and of his right to remain silent. So much the People concede. But it is not conceded that from the record here it can be found or inferred that the critical accusatory stage had been reached.

The People also contend that because appellant failed to object to the trial court on the ground here under discussion the matter cannot be raised on appeal. The interrogation took place long before *Escobedo*, which was decided June 22, 1964. But the trial took place on August 7, 1964, and thus, as the People argue, the question is presented as to whether it is unreasonable to require a defendant to object to the trial court on this ground in a trial that occurred after *Escobedo* and before *Dorado* (decided January 29, 1965). Submitting that it is not unreasonable, the People argue that the decision of the Supreme Court in *Dorado* "merely involves the logical application of existing rules of evidence established by the United States Supreme Court in *Massiah* v. *United States*, 377 U.S. 201 [84 S.Ct. 1199, 12 L.Ed.2d 246], and *Escobedo* v. *Illinois*, 378 U.S. 478 [84 S.Ct. 1758, 12 L.Ed.2d 977]." We think it would be unreasonable to require the making of an objection under the circumstances of this case, including the short time between *Escobedo* and the date of trial. We note that a conference was held as heretofore stated on the

admissibility of the officer's testimony as to appellant's statements to him and that throughout the conference, as reported in the record, none of the three involved in the conference noted the possibility that the statements would be inadmissible under the *Escobedo* rule. It was, of course, the duty of the trial judge if the matter was in mind to affirmatively undertake an inquiry as to admissibility on that ground. It was also the duty of defense counsel to do likewise, and the prosecutor, charged as he is at all times with the duty to try causes fairly, would himself have undertaken an investigation had the matter been in his mind. We think it is clear that the matter was not thought of by the conferees. We think it both unreasonable and unjust to dispose of this issue upon the ground that no objection was interposed at the trial.

Turning now to the merits of the claim that the appellant's constitutional rights were violated, we search the record to ascertain if it will sustain an inference that the critical accusatory stage had ever been reached. We here append in a footnote all pertinent parts of the testimony of the officer,[1] whose testimony alone bears on the issue.

It appears that following the conversation between the officer and appellant the officer filed in the police department in San Jose an "offense report." Apparently it was this report that was used at the trial. There was nothing to indicate that the officer ever reported the results of his conversa-

---

[1] The officer testified as follows: He is a detective sergeant with the police department in San Jose. On June 5, 1962, he was a city patrolman. On that day he talked to appellant about the burglary of Stilson Brothers Cleaners located at 35th Street and 3d Avenue in the City of Sacramento. Appellant identified the establishment as the cleaners where he used to work while he lived across the street in a hotel. He could see the second story level of the cleaning establishment building and he entered a window on that level. He removed eight dresses. He selected dresses with silk linings. He had discussed earlier with the officer a problem he had requiring him to have, preferably, a silk slip to use as a symbol when he masturbated. It was at night that he entered. He admitted "stealing these dresses." The statements were given freely and voluntarily by the appellant, and "he brought them up." "The conversation I was having with him was not related to the cleaners when he volunteered the information." No threats were made and no promises given. On cross-examination the officer said that his testimony had been based upon a review of his notes made at the time and reviewed before coming to testify. He said: "I had an opportunity to read the offense report." He had a copy of the report with him. He said appellant had not stated that the only garments he had ever taken for this purpose would be either a ladies' slip or a nightgown but did say "the Defendant advised me the only garments that he ever had taken for this purpose was a silk slip, but this—he had reference to thefts from clotheslines. Q. He stated that the only garments that he had ever taken for this purpose—now,

tion to Sacramento authorities or that any proceedings were taken in that regard; nor is there specific explanation of how the matter came to the attention of the San Jose police. There is no showing appellant was ever arrested and it appears he had twice talked to the officer about his drive to obtain feminine apparel.

"Only when the investigatory stage has become an accusatory one, that is, when it has begun to focus on a particular suspect, . . . and the police have carried out a process of interrogations that lends itself to eliciting incriminating statements, does the doctrine of *Escobedo* apply. . . . Moreover, an important consideration in determining whether the accusatory stage had thus been reached must be a careful concern that there be no interference with the legitimate police investigation of an unsolved crime." (*People* v. *Dorado*, 62 Cal.2d 338, 354 [42 Cal.Rptr. 169, 398 P.2d 361].) We are satisfied that this record will not support an inference that the conversations held between appellant and the San Jose police officer ever reached the accusatory stage. Upon the record before us, there is no merit in the claim that appellant's constitutional rights were infringed upon by the use of the statements received in evidence.

The next assignment of error rests upon the refusal of the trial court on request to instruct the jury as follows: "You may find the Defendant guilty of any offense, the commission of which is necessarily included in that with which he is charged, if, in your judgment, the evidence supports such a verdict under my instructions.

"To enable you to apply the foregoing instruction, if your findings of fact require you to do so, I instruct you that the offense of burglary, of which the Defendant is charged in the

---

you are speaking of for the purpose of masturbating? A. Yes, sir. Q. Was a silk slip? A. We were discussing thefts from clotheslines at that time and that statement is in reference to thefts from clotheslines. . . . Q. In taking these dresses from the Stilson Cleaners that you referred to in Sacramento, did the Defendant, in this conversation, tell you that he returned those dresses to the cleaners? A. He said that later during the week, when the cleaner was open, he had returned the dresses by throwing them in the back door of the cleaners. Q. In this conversation, did the Defendant also admit breaking into a Grayson store? A. No, sir, this wasn't a break-in. Q. Did he admit taking articles from Grayson's? A. Yes. Grayson's was open for business. Q. And did he say that his reason for taking that was in order to be placed in a mental institution? A. That was his goal; in other words, to be returned to County Jail to get—in order to get to a mental institution. . . . He advised me that his intentions involved with the theft from Grayson was to seek help from a mental facility."

information, necessarily includes the crime of trespassing defined as follows:

"Every person who wilfully commits any trespass by entering and occupying any real property or structures of any kind without the consent of the owner, his agent, or the person in lawful possession thereof, is guilty of a misdemeanor."

The instruction was properly refused. Criminal trespass is not a necessarily included offense in a charge of burglary. (*People* v. *Harris,* 191 Cal.App.2d 754 [12 Cal.Rptr. 916].)

■  Appellant claims the prosecutor was guilty of prejudicial misconduct in his final argument to the jury. Extended comment is unnecessary on this assignment of error. No objection or request for an admonition was made to the court at the time. Where no objection is made to alleged misconduct of the prosecuting attorney, such claimed misconduct will not furnish grounds sufficient to justify the granting of a new trial or the reversal of a judgment. (*People* v. *Rosoto,* 58 Cal.2d 304 [23 Cal.Rptr. 779, 373 P.2d 867]; *People* v. *Perez,* 58 Cal.2d 229 [23 Cal.Rptr. 569, 373 P.2d 617]; *People* v. *Lyons,* 50 Cal.2d 245 [324 P.2d 556].) There are well-known exceptions to this general rule but they have no application upon the record here.

■  Finally, appellant argues that the evidence was insufficient for the jury to conclude that he entered the store with the intent, among other things, of stealing a dress or dresses for future use.  ■  The crime of burglary is complete when the entry with necessary intent is made, whether the intended theft was committed or not.  ■  But here there was evidence that one dress was missing and although a search several days later did not disclose that the dress was in appellant's possession, this would not preclude the jury from concluding that he had taken it, and that he had entered the store with the intent to do so. The evidence sustains the verdict.

The judgment and order appealed from are affirmed.

Pierce, P. J., and Regan, J., concurred.