[Crim. No. 12350. Second Dist., Div. One. Mar. 17, 1967.]

THE PEOPLE, Plaintiff and Respondent, v. JOE CHARLES WALTERS et al., Defendants and Appellants.

Joe Charles Walters, in pro. per., and Charles M. Berg, under appointment by the Court of Appeal, for Defendants and Appellants.

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, and James H. Kline, Deputy Attorney General, for Plainttiff and Respondent.

FOURT, J.—Appellants Joe Charles Walters and Lloyd Sancho, Jr., appeal from their conviction of burglary which the jury found to be of the second degree.

The circumstances which led to their conviction are as follows: Fannie Yee and her husband owned a grocery store at 8751 S. Compton Street, Los Angeles, and on October 19, 1965, at about 7:30 p.m. Fannie Yee secured the premises, checked the burglar alarm system to be certain that all the wires were connected, and went home. The burglar alarm system is silent; if one of the wires is broken it sounds only in the company offices of U. S. Burglar Alarm and that company, in turn, notifies the owner and the police. Sometime around midnight Mrs. Yee received a call from the company registering an alarm and she thereupon returned to the store. Although none of the merchandise was disturbed or missing, she found that the wire and grille in the restroom ceiling had been broken and that the grille was hanging down. This grille, mounted flush with the ceiling, concealed a shaft two or three feet high, which went to the roof, and normally was capped by a metal cover which also had been removed.

One of the prosecution witnesses was Deputy Sheriff Ballenger who received a radio message in his patrol car at about 12:40 on the morning of October 20, 1965, and responded to the alarm immediately by proceeding to the address of the Yee market. Once there he and his partner deployed to maintain the entire building under surveillance. They observed that a car parked across the street blinked its lights twice, and they later determined that two women occupied the car which was registered to Sancho's father. A few minutes after they arrived, Officer Ballenger observed Officer Monarrez, together with appellants and one nonappealing defendant, Ross, on the roof of the building.

Officer Monarrez testified that he climbed to the roof where he found appellants and Ross. They were near a vent, the cover of which had been removed, and beside the vent stood a large box in which he found nine pillow cases and coil of rope. The vent extended from the roof to the ceiling of the market's restroom. Another rope was attached to a sewer pipe on the roof and this rope extended into and down the open vent to rest finally upon the grille with some loops of rope extending into the restroom below. A pair of pliers and a screwdriver also rested upon the grille which had been so bent or broken that a portion of it was hanging down into the restroom. Officer Monarrez used his baton to knock these tools from the grille to the restroom floor.

Walters and Sancho each testified in his own defense at the trial. Each said they met in front of a pool hall and were

standing there idly talking when the police stopped to interrogate them about the riot, requested identification, and placed them in a patrol car. However, before they reached the station the officers decided to release appellants and dropped them on Compton Boulevard, admonishing them to leave the neighborhood, or they would be picked up. They walked some distance down Compton Boulevard and when they saw a police car approaching they ran up what they thought was an alley, then climbed the fence at the end and scaled the building to find themselves at the spot where Officer Monarrez ultimately discovered them. They testified further that they had observed some items lying around near the vent but denied that they made any entry or attempt to effect an entry. Their defense was that they were attempting only to avoid the police, and Walters said also that he saw two other men on the roof just before they arrived who, he felt, must have been the burglars.

Appellants contend that the evidence was insufficient to sustain the judgment, and that the court committed prejudicial error when it admitted into evidence a diagram of the market prepared by the prosecution on which the words ''point of entry'' were marked but blocked over. We find no merit in these contentions.

 The gravamen of a charge of burglary is the act of entry which must be accompanied by a felonious intent. The existence of the requisite intent may be inferred from circumstantial evidence (*People* v. *Conley*, 220 Cal.App.2d 296, 299 [33 Cal.Rptr. 866]), and the crime of burglary is complete when an entry with the essential intent is made, regardless whether the felony planned is committed or not (*People* v. *Mitchell*, 239 Cal.App.2d 318, 328 [48 Cal.Rptr. 533]). The burglar alarm from the Yee market signified a suspicious occurrence in the midnight hours; shortly thereafter appellants and codefendant Ross were apprehended on the market's rooftop standing beside a vent, the lid to which had been pried off and removed. Police officers found a crowbar near the vent and a pair of pliers and a screwdriver at the bottom of the vent on the broken grating in the ceiling of the market's restroom. Nearby was a sewer pipe around which a rope had been tied. The rope, 15 or 16 feet long, extended down the vent into the building, and was discovered by Mrs. Yee dangling into the restroom of the market premises. It cannot be doubted that the crime of burglary was under way when the burglar alarm sounded and the officers thereafter intercepted the criminals.

The slightest entry is sufficient to constitute the crime of burglary, if it be with felonious intent.

"It is settled that a sufficient entry is made to warrant a conviction of burglary when any part of the body of the intruder is inside the premises." (*People* v. *Failla,* 64 Cal.2d 560, 569 [51 Cal.Rptr. 103, 414 P.2d 39]; *People* v. *Allison,* 200 Cal. 404, 407-408 [253 P. 318]; *People* v. *Massey,* 196 Cal. App.2d 230, 236 [16 Cal.Rptr. 402].) Moreover, it has been established that the entry need not be any part of the body, but that an entry may be made by an instrument, where the instrument is inserted for the purpose of committing the felony. (Clark and Marshall, Law of Crimes (6th ed. 1958) Entry, § 13.04, 885, 886; *Walker* v. *State* (1879) 63 Ala. 49 [35 Am.Rep. 1]; *State* v. *Crawford* (1899) 8 N.D. 539 [80 N.W. 193, 73 Am.St.Rep. 772, 46 L.R.A. 312].) In the instant case it is undisputed that the grille on the ceiling of the market's restroom had been broken and was hanging down inside, while the rope which had been inserted through the vent also extended well into the room. The presence of these items on the market's interior and the discovery of the instruments nearby sustain the inference that hands and tools manipulated by appellants effected an entry which constituted the crime of burglary. (1 Witkin, Cal. Crimes (1963) Crimes Against Property, § 456(b), 418-419.) The felonious intent to commit theft may be inferred from the unlawful entry alone. (*People* v. *Holley,* 194 Cal.App.2d 538, 540 [15 Cal.Rptr. 44].) The lateness of the hour and the presence in the area of instruments commonly used by burglars strongly implicates appellants in the crime of burglary with intent to commit theft.

Finally, we cannot concur with appellants who claim that the admission of a diagram of the market on which the designation "point of entry" had been marked and subsequently blocked out constituted reversible error. The diagram was first inspected by counsel for defendants who made no objection to its admission in evidence. Only two of the jurors disclosed a recollection of what was printed on the diagram. In response to the court's question as to whether any felt he would be unable to follow the court's instruction "this should not have been placed on the diagram, it was clearly a conclusion of someone who prepared the diagram, it should not be considered by you at all as evidence that there was an entry made there" none of the jury answered in the negative. This constituted an admonishment that the jury disregard these

blocked out words and thus corrected whatever slight impropriety might otherwise have existed. Only in extreme circumstances will such an admonishment not suffice (cf. *People* v. *Crossley,* 213 Cal.App.2d 561, 568 [28 Cal.Rptr. 922]), and we must assume that the jury obeyed the court (cf. *People* v. *Black,* 45 Cal.App.2d 87, 98 [113 P.2d 746]). In any event, the incident was not prejudicial since it is not probable that a different verdict would have been rendered had these words not been marked upon the diagram. (*People* v. *Watson,* 46 Cal. 2d 818, 836 [299 P.2d 243].)

The judgments are, and each is, affirmed.

Wood, P. J., and Lillie, J., concurred.

A petition for a rehearing was denied April 4, 1967, and the petition of appellant Walters for a hearing by the Supreme Court was denied May 10, 1967.