[No. E041389. Fourth Dist., Div. Two. Dec. 19, 2007.]

THE PEOPLE, Plaintiff and Respondent, v.
EDUARDO VILLEGAS CALDERON, Defendant and Appellant.

**[CERTIFIED FOR PARTIAL PUBLICATION\*]**

---

*Pursuant to California Rules of Court, rules 8.1100 and 8.1110, this opinion is certified for publication with the exception of part II B.

## COUNSEL

Marcia R. Clark, under appointment by the Court of Appeal, for Defendant and Appellant.

Edmund G. Brown, Jr., Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Gary W. Schons, Assistant Attorney General, Ronald A. Jakob, Jennifer A. Jadovitz and Christopher Beesley, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**RICHLI, Acting P. J.**—The evidence, when viewed in the light most favorable to the judgment, showed that defendant Eduardo Villegas Calderon and two accomplices went to the victim's home in the dead of night, armed with knives, to collect a disputed debt. One of the accomplices kicked in the victim's door, but before anyone in the group had gone inside, the victim came running out. Defendant tried to stab the victim in the chest, but the victim grabbed the knife blade; thus, he was slashed in the hand instead.

A jury found defendant guilty of first degree burglary (Pen. Code, §§ 459, 460, subd. (a)) and assault with a deadly weapon (Pen. Code, § 245, subd. (a)(1)). As a result, defendant was sentenced to a total of five years in prison.

Defendant's sole appellate contention is that the instructions erroneously allowed the jury to convict him of burglary on the theory that the penetration of the victim's home by the victim's own door constituted the necessary entry. We disagree. While this precise factual scenario has never been presented before, we believe that the Supreme Court's reasoning in *People v. Davis* (1998) 18 Cal.4th 712 [76 Cal.Rptr.2d 770, 958 P.2d 1083] compels the conclusion that kicking in the door of a home can be a sufficient entry to constitute burglary.

I

## FACTUAL BACKGROUND

Defendant and victim Roberto Cruz Vasquez (Cruz) first met each other through Cruz's sister, whom defendant was dating at the time. Cruz lived in a one-room outbuilding behind a friend's house in Riverside.

In November 2005, defendant and Cruz bought a car together. It was registered in Cruz's name. However, defendant and Cruz contributed more or less equally to the downpayment, which totaled about $1,200. It was agreed that defendant would make the payments on the car and would have the right to drive it.

About two weeks later, the car was impounded because of something defendant did. Cruz had to pay $1,314 to get it released. He borrowed $300 of this from defendant. Cruz also had to fix the car up because defendant had "left it in bad shape." As a result, Cruz stopped letting defendant drive the car.

In January 2006, defendant came to Cruz's house with two other men and told Cruz that he wanted his money back. Cruz felt that he did not owe defendant any money, because he had been forced to pay the impound fees. Accordingly, he refused. Defendant started walking away, but called back, "We're going to fuck you up."

On February 19, 2006, around 3:15 or 3:30 a.m., Cruz was awakened by the sound of someone moving the handle of his front door. When he looked out his front window, he saw defendant and the same two other men. One of the other men pulled out a knife.

At the same time, Cruz yelled, "Who is it[?]" One of the other men told him to open the door. Cruz told them to leave because he was going to call the police.

At that point, the man who was holding a knife kicked in the front door. Cruz ran outside. As he did so, he realized that all three men were holding

knives. Defendant tried to stab Cruz in the chest, but Cruz grabbed the knife, sustaining a cut to his hand instead. Cruz then ran away and into his friend's house.

Defendant, testifying on his own behalf, admitted going to Cruz's house around 3:00 a.m. to ask Cruz to pay the money he owed him. He claimed that he brought only one other person with him—his cousin, Eli Villegas—to protect him from Cruz. Defendant denied having a knife; he also claimed he did not see his cousin with a knife.

According to defendant, they knocked on the door. Cruz came to the window and talked to them. However, he refused to pay; he told them to leave, or he would call the police. Defendant said, "Let's go," but his cousin kicked in the door. Cruz came out, and the cousin started fighting with him. Cruz fell down, then got up and ran away.

When the police first interviewed Cruz, later that same day, he told them that one of the other men—not defendant—had a knife and tried to stab him. However, the interview had to be conducted through a Spanish-speaking officer, and there could have been an error in translation.

## II

## DISCUSSION

As noted, defendant contends that the jury should not have been allowed to convict him of burglary on the theory that kicking in the door constituted the necessary entry.

A.  *Additional Factual and Procedural Background.*

In closing, the prosecutor argued: "Now, under the law in burglary, a person enters a building if some part of his body or—and here's the important part—some object under his control penetrates an area inside that building's outer boundary. No matter how slight that penetration is. That is enough to constitute burglary.

"So in this case here, the kick of that door. When that door flings open, that is enough for entry. Because [Cruz] told you—and even the defendant, under

his own admissions told you that his cousin Eli was the one that forced open that door. That door would never have moved but for . . . it being kicked. And when it was kicked, that door was under Eli's control.

"I would also submit to you that when he kicked in the door, no matter how slight, his foot penetrated the outer boundary of that door."

In his own closing, defense counsel took issue with this: "I disagree, and the Court will instruct you on the law, that the door going inside the residence is sufficient in and of itself for a burglary. . . . [M]aybe the foot penetrated the threshold. Maybe it did. Maybe it didn't. 'Maybe' isn't sufficient for proof beyond a reasonable doubt."

The jury was instructed that, to convict defendant of burglary, it had to find, among other things, that "a person entered a building . . . ." (CALJIC No. 14.50.) At the prosecution's request, it was also given a special instruction that "[u]nder the law of burglary, a person enters a building if some part of his . . . body or *some object under his control* penetrates the area inside the building's outer boundary." (Italics added.) Defense counsel did not object to this instruction.

The jury was also fully instructed on attempted burglary, as a lesser included offense of burglary (CALJIC No. 6.00), as well as on aiding and abetting liability (CALJIC Nos. 3.00, 3.01, 3.02, 3.03, 3.10, 14.54).

At sentencing, defense counsel made an oral motion to modify the burglary conviction to attempted burglary (Pen. Code, § 1181, subd. 6), on the ground that there had been insufficient evidence of an entry. He argued that "the intent when the case law talks about an object under the control of the defendant does not include the window or the door. It would include, let's say, a pry bar or, in this case, a foot, something belonging to the individual responsible, not part of the residence itself." He also argued that there was no evidence that the kicker's foot had actually "crossed the threshold . . . ." The trial court denied the motion, finding sufficient evidence "that there was penetration both by the door and by the kicker's foot."

B.  *Forfeiture.*[*]

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

---

[*]See footnote, *ante,* page 137.

## C. *Merits.*

■ Burglary consists of an entry into a building (or other statutorily specified enclosure) with the intent to commit a felony. (Pen. Code, § 459; *In re Ryan N.* (2001) 92 Cal.App.4th 1359, 1378 [112 Cal.Rptr.2d 620].) "[A] sufficient entry is made to warrant a conviction of burglary when any part of the body of the intruder is inside the premises. [Citations.]" (*People v. Failla* (1966) 64 Cal.2d 560, 569 [51 Cal.Rptr. 103, 414 P.2d 39].) "Moreover, it has been established that the entry need not be any part of the body, but that an entry may be made by an instrument, where the instrument is inserted for the purpose of committing the felony. [Citations.]" (*People v. Walters* (1967) 249 Cal.App.2d 547, 551 [57 Cal.Rptr. 484].)

"Courts of other jurisdictions have held that an entry may be accomplished by the intrusion of an instrument, but only if the instrument is inserted and used as a means of effectuating or attempting to effectuate the theft and not solely as a means of accomplishing the breaking into the building. [Citations.]" (*People v. Osegueda* (1984) 163 Cal.App.3d Supp. 25, 31 [210 Cal.Rptr. 182].) California, however, has rejected this distinction: "We find no plausible reason for holding that an entry by instrument must be for the purpose of removing property. . . . 'Any kind of entry, partial or complete, direct or indirect, will satisfy the simple statutory requirement. Thus, the defendant's arm, foot or finger placed in an open door, window or other aperture, or through the glass of a window, is an entry; and the entry may also be made through the agency of an instrument or tool . . . .' [Citation.]" (*Id.* at pp. Supp. 31–32, italics omitted; accord, *People v. Moore* (1994) 31 Cal.App.4th 489, 491–492 [37 Cal.Rptr.2d 104].)

Despite this expansive interpretation, defendant essentially argues that "instrument" and "tool" are words of limitation; thus, an independent object used to break in to a building qualifies, but a part of the building that is broken in does not.

Although *People v. Davis, supra,* 18 Cal.4th 712, is not literally on point, its reasoning dictates the result here. There the issue was whether placing a forged check in the chute of the walkup window of a check cashing business was a sufficient entry for purposes of burglary. (See *id.* at p. 714.)

The court began by noting: "[I]t long has been established that a burglary also can be committed by using an instrument to enter a building." (*People v.*

*Davis, supra*, 18 Cal.4th at p. 716.) However, it cautioned: "It is important to establish reasonable limits as to what constitutes an entry by means of an instrument for purposes of the burglary statute. Otherwise the scope of the burglary statute could be expanded to absurd proportions." (*Id.* at p. 719.)

■ The "reasonable limits" the court established were as follows: "The crucial issue . . . is whether [the] insertion . . . was the type of entry the burglary statute was intended to prevent. In answering this question, we look to the interest sought to be protected by the burglary statute in general, and the requirement of an entry in particular." (*People v. Davis, supra*, 18 Cal.4th at p. 720.) " '[A] burglary remains an entry which invades a possessory right in a building.' [Citation.]" (*Id.* at p. 721, quoting *People v. Gauze* (1975) 15 Cal.3d 709, 714 [125 Cal.Rptr. 773, 542 P.2d 1365].) ". . . ' "Burglary laws are based primarily upon a recognition of the dangers to personal safety created by the usual burglary situation—the danger that the intruder will harm the occupants in attempting to perpetrate the intended crime or to escape and the danger that the occupants will in anger or panic react violently to the invasion, thereby inviting more violence. The laws are primarily designed, then, not to deter the trespass and the intended crime, which are prohibited by other laws, so much as to forestall the germination of a situation dangerous to personal safety." Section 459, in short, is aimed at the danger caused by the unauthorized entry itself.' [Citation.]" (*Davis*, at p. 721, quoting *Gauze*, at p. 715, quoting *People v. Lewis* (1969) 274 Cal.App.2d 912, 920 [79 Cal.Rptr. 650].)

The court concluded: "Inserting a stolen ATM card into an ATM, or placing a forged check in a chute in the window of a check-cashing facility, is not using an instrument to effect an entry within the meaning of the burglary statute. Neither act violates the occupant's possessory interest in the building as does using a tool to reach into a building and remove property. It is true that the intended result in each instance is larceny. But the use of a tool to enter a building, whether as a prelude to a physical entry or to remove property or commit a felony, breaches the occupant's possessory interest in the building. Inserting an ATM card or presenting a forged check does not." (*People v. Davis, supra*, 18 Cal.4th at p. 722.)

The Supreme Court then drew the following analogy: "[A] person who returns books to a library by depositing them in a book drop, causing the books to slide down a chute into the library, has not entered the library. It would be unreasonable to characterize the books as 'instruments' used to enter the library. But if a person reaches his or her hand into the book drop,

or uses a tool, in an attempt to steal books, such an act would constitute burglary." (*People v. Davis, supra,* 18 Cal.4th at pp. 722–723, fn. omitted.)

Significantly, *Davis* did *not* hold that an entry by instrument is made *only* if the object is used either to effect the entry or to accomplish the intended felony. And, again significantly, *Davis* did *not* hold that what is controlling is the dictionary definition of "instrument" or "tool." Indeed, it would appear that the forged check in that case came within the dictionary definition of an "instrument," because it *was* used to accomplish the intended felony. Rather, *Davis* focused on whether the insertion of the object into a building violated an interest that the burglary statute is intended to protect, such as the occupant's possessory interest in the building.

Surely kicking in the door to a home invades the possessory interests in that home! Admittedly, the door is doing what a door is supposed to do, but it is doing so under the control of an invader, not the householder. Moreover, kicking in a door creates some of the same dangers to personal safety that are created in the usual burglary situation—the occupants are likely to react to the invasion with anger, panic, and violence.

At the same time, this situation is not analogous to depositing a library book in a book drop. Doing so in no way violates the library's possessory interests. The library *wants* people to deposit books in its book drop. To that end, and to that extent, it has surrendered its possessory interests. And library personnel are hardly likely to react by coming out of the library with a shotgun. By contrast, inserting a hand or tool into a book drop to steal a book does violate the library's possessory interests. In addition, despite the stereotype of librarians as not exactly action heroes, it is conceivable that it might even provoke a violent vigilante response.

■ We conclude that kicking in the door of a home is a sufficient entry to constitute burglary. Accordingly, the trial court correctly instructed the jury on the "entry" element of burglary. At worst, the instruction was overbroad; arguably, it might have permitted a hypothetical jury to find that the hypothetical insertion of a check into the chute of a walkup window was a sufficient entry. Here, however, where the only entry shown by the evidence that was not made with some part of the body consisted of kicking in a door to a home, that hypothetical overbreadth was harmless beyond a reasonable doubt.

## III

## DISPOSITION

The judgment is affirmed.

Gaut, J., and King, J., concurred.

Appellant's petition for review by the Supreme Court was denied February 27, 2008, S160168. George, C. J., and Corrigan, J., did not participate therein.