Filed 6/12/15  P. v. Canady CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>  Plaintiff and Respondent,<br><br>  v.<br><br>CHARLES CANADY,<br><br>  Defendant and Appellant. | F068093<br><br>(Super. Ct. No. F13903804)<br><br><br>**OPINION** |

-ooOoo-

APPEAL from a judgment of the Superior Court of Fresno County.  Denise R. Whitehead, Judge.

C. Matthew Missakian, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Louis M. Vasquez, Lewis A. Martinez, and Charity S. Whitney, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

A Fresno County jury found Charles Canady guilty of multiple felony offenses including attempted burglary, burglary, making criminal threats, and assault with a

deadly weapon. Canady appeals the conviction of assault with a deadly weapon on grounds that the trial court failed to provide a sua sponte instruction on the lesser included offense of misdemeanor assault. He further contends that other jury instructions were potentially misleading. Finally, he alleges that while a single act of burglary may have occurred, the evidence does not support a separate conviction for attempted burglary. We affirm the judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

Canady was charged by amended information with attempted first degree residential burglary (Count 1; Pen. Code, §§ 664, 459, 460, subd. (a); all further statutory references are to this code), making criminal threats (Counts 2 & 3; § 422), first degree residential burglary (Count 4; §§ 459, 460, subd. (a)), assault with a deadly weapon (Count 5; § 245, subd. (a)(1)), and misdemeanor vandalism (Count 6; § 594, subd. (a)(2)). An enhancement allegation was attached to Count 5 for infliction of great bodily injury (§ 12022.7, subd. (a)). It was also alleged that Canady had suffered a prior strike and serious felony conviction (§§ 667; 1170.12), and served a prior prison term within the meaning of section 667.5, subdivision (b). The case went to trial in July 2013.

Prosecution Case

On April 27, 2013, Canady made an unscheduled visit to the home of his ex-wife, Tia Marshall. Ms. Marshall had custody of their two minor children, and Canady had apparently intended to surprise the kids with some gifts. His knock at the front door of the home was answered by Ms. Marshall's boyfriend, Robert Booker. Separated by a security screen, the two men had a brief conversation during which Canady demanded to see his children. Mr. Booker refused to open the door.

After being denied admission to the home, Canady walked over to a window that looked into Ms. Marshall's kitchen and smashed it with a tire iron.[1] He attempted to

---

[1] Both parties use the term "tire iron" in their briefs, which is how the item was described by police officers who provided foundational testimony for its admission into

2.

climb through the opening, but fell backwards onto the ground. In the midst of this activity, Canady told Ms. Marshall, "I'm going to come in. I'm going to kill you. I'm going to beat your ass, bitch." She called 911 for help.

While Ms. Marshall was speaking to a 911 dispatcher, Canady entered her back yard and approached a sliding glass door that led into the house from a patio area. Upon seeing Canady move to the back patio, Mr. Booker armed himself with a knife and stood in front of the sliding glass door. Canady began directing his threats at Mr. Booker, screaming, "I'm going to kill you!" He then used the tire iron to break through the door. The weapon struck Mr. Booker in the thumb as he raised his hand to protect himself, inflicting a wound that required eight stitches to close. Canady entered the house and began grappling with Mr. Booker. The victim was eventually able to place Canady in a headlock and kept him pinned down until the police arrived.

Defense Case

The defendant testified on his own behalf. He described arriving at Ms. Marshall's residence and being turned away without explanation. While trying to engage his ex-wife in conversation, he looked through a window and saw his three-year-old daughter standing next to Mr. Booker, who was wearing nothing but a pair of "Hanes drawers." Feeling offended by what he had seen, Canady went out to his car and retrieved the tire iron.

In Canady's version of events, he "busted the first window" with the tire iron but made no attempt to climb through it. Rather than threatening Ms. Marshall with harm, he had said, "Bitch, you bought the house in my name, I can break any window I want." Next, he "went around to the back to break the back window," but turned to run away as

_____

evidence. The metal object was estimated to weigh approximately five to six pounds. Based on the testimony of several witnesses, it appears the item was actually a component of a jack that is used to lift a vehicle off the ground in order to facilitate the changing of a tire, or possibly the jack itself. For ease of reference, we will adopt the terminology used by the parties.

soon as the glass shattered. As he was trying to leave, Mr. Booker exited the home and attacked him with a knife. Canady denied entering the house or having any intent to do so. He also denied attempting to strike, or actually striking, Mr. Booker with the tire iron.

Verdict and Sentencing

Canady was convicted as charged on all counts. The great bodily injury enhancement alleged in connection with Count 5 was found not to be true. A bifurcated bench trial resulted in true findings on the remaining enhancement allegations.

On September 26, 2013, Canady was sentenced to an aggregate term of 14 years and 4 months in prison. The sentence was calculated using Count 4 as the principal count, for which he received the aggravated term of six years, doubled to 12 years pursuant to section 667, subdivision (e)(1) for the prior strike and further enhanced by a consecutive one-year term for the prior prison term. A consecutive term of 16 months was imposed for the Count 3 conviction (criminal threats against Tia Marshall), representing one-third of the middle term, doubled because of the prior strike. Additional prison terms imposed for Counts 1, 2, and 5 were ordered to be served concurrently. A notice of appeal was filed on September 27, 2013.

## DISCUSSION

### Failure to Instruct on Simple Assault as a Lesser Included Offense

Appellant contends that the trial court had a sua sponte duty to instruct on simple assault as a lesser included offense of assault with a deadly weapon as charged in Count 5. He construes the court's failure to provide such an instruction as prejudicial error. The claim fails because even if error occurred, it was harmless.

Assault is "an unlawful attempt, coupled with a present ability, to commit a violent injury on the person of another." (§ 240.) A conviction for assault with a deadly weapon requires proof of the crime of assault, plus proof that it was accomplished by the use of a deadly weapon. (§ 245, subd. (a)(1).) It follows that section 240 is a lesser

4.

included offense of section 245, subdivision (a)(1). (See *People v. Lopez* (1998) 19 Cal.4th 282, 288 ["if a crime cannot be committed without also necessarily committing a lesser offense, the latter is a lesser included offense within the former."].)

Trial courts have a sua sponte duty to instruct on general principles of law relevant to the issues raised by the evidence, which includes giving instructions on lesser included offenses. (*People v. Koontz* (2002) 27 Cal.4th 1041, 1085.) The de novo standard of review is applied to questions concerning whether a trial court erred by failing to provide a required instruction. (*People v. Cook* (2006) 39 Cal.4th 566, 596.) Where error is shown, the reviewing court must determine if there is a reasonable probability that the omission affected the jury's verdict. (*People v. Breverman* (1998) 19 Cal.4th 142, 177-178; *People v. Watson* (1956) 46 Cal.2d 818, 836.)

The duty to instruct on simple assault as a lesser included offense of assault with a deadly weapon exists unless, based on the evidence, the jury could only find the defendant guilty of the greater offense or not guilty at all. (*People v. Page* (2004) 123 Cal.App.4th 1466, 1474.) Stated another way, "the obligation to instruct on a lesser included offense does not arise when there is no evidence that the offense was less than that charged." (*People v. Wyatt* (2012) 55 Cal.4th 694, 702-703.) In this case, the trial court found the evidence did not warrant an instruction on simple assault. Canady's trial counsel apparently agreed with this conclusion, since he was the person who requested that an instruction on simple assault not be given.

On appeal, Canady argues that a lesser included offense instruction was required because a tire iron does not constitute a deadly weapon as a matter of law. His position is stated as follows: "[W]hether or not Mr. Canady used the tire iron in a manner likely to cause death or great bodily injury merited consideration by the jury. While there may have been evidence sufficient to sustain a deadly weapon finding, a simple assault conviction would also have been reasonable and supported by [the] evidence, and it was error not to give that determination to the jury."

5.

It is true that the nature of the weapon used in the offense was a factual issue for the jury to decide. (*People v. Fisher* (1965) 234 Cal.App.2d 189, 193 ["The character of the tire iron and its use, either as a dangerous or as a deadly weapon, is a question of fact."].) However, Canady fails to recognize that the issue *was* submitted to the jury as part of the instructions it received regarding Count 5. The trial court explained that to prove the defendant guilty of this crime, the prosecution needed to show: "1. The defendant did an act with a deadly weapon other than a firearm that by its nature would directly and probably result in the application of force to a person…." To assist the jury in making its determination, the instruction stated: "As used in the statute defining the offense of assault with a deadly weapon, a 'deadly weapon' is any object, instrument, or weapon that is used in such a manner as to be capable of producing and likely to produce, death or great bodily injury." The term "great bodily injury" was defined elsewhere in the instruction. Thus, the jury could not have reached the ultimate question of guilt or innocence without first deciding whether, under the circumstances of the case, the tire iron qualified as a deadly weapon.

Error in failing to instruct the jury on a lesser included offense is harmless when the factual question posed by the omitted instruction is necessarily resolved adversely to the defendant through other properly given instructions. (*People v. Chatman* (2006) 38 Cal.4th 344, 392; *People v. Elliot* (2005) 37 Cal.4th 453, 475 (*Elliot*).) "'"In such cases the issue should not be deemed to have been removed from the jury's consideration since it has been resolved in another context, and there can be no prejudice to the defendant since the evidence that would support a finding that only the lesser offense was committed has been rejected by the jury."'" (*Elliot*, *supra*, 37 Cal.4th at p. 475.) Accordingly, any error in failing to instruct jurors on simple assault as a lesser included offense of assault with a deadly weapon was harmless. The alleged error may also be deemed harmless in light of Canady's failure to show there is any likelihood that a

reasonable juror would have otherwise found the tire iron was not a deadly weapon within the context of the trial evidence.

In a related claim, Canady submits that failure to instruct on simple assault as a lesser included offense under Count 5 requires reversal of his convictions for attempted burglary and burglary under Counts 1 and 4, respectively. As best we understand the argument, the jury supposedly believed Canady's intention upon entering the home was to commit misdemeanor assault rather than the target offenses alleged by the prosecution, i.e., felonious criminal threats or assault with a deadly weapon. Appellant does not explain why, if the jury did not believe he intended to commit one of the specified felonies, it did not simply follow the instructions it was given and acquit him on those charges. The theory is too attenuated and speculative to establish grounds for reversal. For the reasons stated above, we conclude it is not reasonably probable that the outcome of the case would have been different but for the trial court's failure to instruct on simple assault as a lesser included offense of assault with a deadly weapon.

**Miscellaneous Claims of Instructional Error**

Canady presents three additional, interrelated claims of instructional error, all of which are raised for the first time on appeal. We agree with the Attorney General that these claims should be considered forfeited. Furthermore, none of the alleged errors were prejudicial.

The following principles provide the necessary context for appellant's arguments. First, burglary is defined by statute as the entry into a house or other specified structure with intent to commit larceny or any felony. (§ 459.) Second, "[i]n a burglary prosecution, complete and accurate jury instructions include the definition of each felony the defendant is alleged to have intended to commit upon entry into the burglarized structure." (*People v. Rathert* (2000) 24 Cal.4th 200, 204.)

The jury was instructed pursuant to CALCRIM No. 1700, which identified the elements of burglary and the felonies Canady was alleged to have intended to commit.

7.

The instruction read, in pertinent part: "A burglary was committed if the defendant entered with the intent to commit Criminal Threats or Assault With a Deadly Weapon." It also stated: "To decide whether the defendant intended to commit Criminal Threats or Assault With a Deadly Weapon, please refer to the separate instructions that I will give you on those crimes." Separate instructions for the target offenses were provided pursuant to CALCRIM Nos. 875 (assault with a deadly weapon) and 1300 (criminal threats).

Canady argues that a clarifying instruction was required to ensure jurors understood that alleging criminal threats as a target offense meant that he had to intend to make new threats upon gaining entry to the home, as opposed to carrying out threats he had already made prior to smashing the window and glass door with his tire iron. Next, he claims the wording of a unanimity instruction given pursuant to CALCRIM No. 252 "reinforced the false impression that the intent Mr. Canady had when he actually made criminal threats could be merged with the entry and/or attempted entry that occurred moments later."[2] Lastly, Canady complains the CALCRIM No. 1700 instruction erroneously stated that he was "charged in Counts One and Four with burglary," when in fact Count 1 alleged *attempted* burglary.

Regarding the third contention, Canady argues he was prejudiced by the possibility that jurors were misled to believe they could "assess the entire incident collectively." The argument circles back around to his initial hypothesis that the jury misunderstood the manner in which the prosecution had alleged criminal threats as a

---

[2] Canady objects to the first paragraph of the instruction, which states: "The crimes and other allegation[s] charged in Counts Five and Six require proof of the union, or joint operation, of act and wrongful intent." The instruction goes on to identify the required mens rea for all counts and explains the concepts of general intent (Counts 5-6) and specific intent (Counts 1-4). According to Canady, the first paragraph of the instruction implied "that counts one through four did *not* require unanimity of action and intent."

possible target crime. In appellant's words, "If the jury did not realize the need to differentiate [his] intent at the time of the first attempted burglary from his intent at the time of the second completed burglary, it is unlikely the jury differentiated his intent at the time he uttered each criminal threat from his intent moments later, when he tried to and/or did enter the home."

We now turn to the issue of forfeiture. "A party may not complain on appeal that an instruction correct in law and responsive to the evidence was too general or incomplete unless the party has requested appropriate clarifying or amplifying language." (*People v. Lang* (1989) 49 Cal.3d 991, 1024.) Canady did not object to, or seek modification of, any of the instructions he now challenges. His silence resulted in forfeiture of those claims. We thus review the alleged instructional errors only to determine if his substantial rights were affected (§ 1259), i.e., whether the alleged errors resulted in a miscarriage of justice. (*People v. Anderson* (2007) 152 Cal.App.4th 919, 927.)

Assuming for the sake of argument that jurors misconstrued the instructions in the manner alleged, we find no prejudice. Canady made two criminal threats prior to attempting to gain entry to the victims' home: "I'm going to kill you" and "I'm going to beat your ass." If, as Canady argues, the jury believed his intentions were to carry out one or both of these threats, it was entirely permissible for the jury to return guilty verdicts on Counts 1 and 4 given the prosecution's alternative theory that the target offense for both crimes was assault with a deadly weapon. We cannot conceive of a realistic scenario in which the verdicts on these counts would have been different but for the alleged errors.

We likewise conclude that failure to accurately refer to the charge of attempted burglary in the CALCRIM No. 1700 instruction did not affect appellant's substantial rights. Canady overlooks the rule that jurors are presumed to be intelligent persons """"capable of understanding and correlating all jury instructions which are given.""""

9.

(*People v. Martin* (2000) 78 Cal.App.4th 1107, 1111.) A reviewing court must also consider the instructions as a whole in order to determine whether prejudicial error has occurred. (*People v. Owens* (1994) 27 Cal.App.4th 1155, 1159; see *People v. Lucas* (2014) 60 Cal.4th 153, 287 ["A single instruction is not viewed in isolation"].) Here, the jury received other instructions that correctly identified the distinct nature of the crimes alleged in Counts 1 and 4, including CALCRIM No. 460 ("Attempt Other Than Attempted Murder"), which began by stating, "The defendant is charged in Count One with attempted First Degree Residential Burglary." The trial court also recited the language in CALCRIM No. 3515, thus informing the jury that each count charged in the case was a separate crime, and that it was required to consider each count separately and return a separate verdict for each one. There is nothing in the record to suggest the jury did not fully comprehend these instructions and/or appreciate the distinct nature of the charges in Counts 1 and 4. In summary, Canady has not shown there was a miscarriage of justice caused by incomplete or inaccurate jury instructions.

**Sufficiency of the Evidence re: Separate Convictions for Attempted Burglary and Burglary**

Canady submits that "the attempted burglary conviction in count one must be dismissed for insufficient evidence because [he] could not lawfully be convicted of both attempting and then completing the same residential burglary." The crux of his argument is that a single act of burglary occurred, beginning when he broke Ms. Marshall's kitchen window and ending upon his entry into the home after he shattered her sliding glass door. We are not persuaded.

"In assessing the sufficiency of the evidence, we review the entire record in the light most favorable to the judgment to determine whether it discloses evidence that is reasonable, credible, and of solid value such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt. [Citations.] Reversal on this ground is unwarranted unless it appears 'that upon no hypothesis whatever is there sufficient

substantial evidence to support [the conviction].'" (*People v. Bolin* (1998) 18 Cal.4th 297, 331.) Evidence is substantial if it "'"reasonably inspires confidence."'" (*People v. Raley* (1992) 2 Cal.4th 870, 891.)

As discussed, burglary requires entry into a structure with the intent to commit a felony therein. "The gravamen of a charge of burglary is the act of entry itself ...." (*People v. Failla* (1966) 64 Cal.2d 560, 568.) Attempted burglary consists of two elements: (1) the intent to commit burglary and (2) "a direct but ineffectual act done toward its commission." (§§ 21a, 459, 664.)

From a strictly procedural standpoint, a person accused of attempting to commit a crime may be convicted of such a charge even if the evidence at trial shows the crime was completed. (§ 663; *People v. Mejia* (2012) 211 Cal.App.4th 586, 605.) Respondent observes, and we agree, that the evidence could arguably be interpreted as showing a burglary occurred the moment Canady broke through the kitchen window. (*People v. Valencia* (2002) 28 Cal.4th 1, 11 [entry occurs within the meaning of burglary if "an instrument employed by the intruder" penetrates the outer boundary of the building], overruled on a different point in *People v. Yarbrough* (2012) 54 Cal.4th 889, 894; see also, *People v. Calderon* (2007) 158 Cal.App.4th 137, 144-145 [kicking in the door of a home constitutes burglary because the door itself becomes an instrument used to penetrate the building].) The dispositive inquiry is whether Canady committed two distinct offenses by attempting to enter the home through the window and the sliding glass door, and succeeding in at least one of those attempts.

Canady acknowledges that his position is weakened by the holding in *People v. Washington* (1996) 50 Cal.App.4th 568 (*Washington*), which concludes that because the crime of burglary is complete upon entry with the requisite intent, each unlawful entry committed with the required mental state supports a separate conviction. (*Id.* at pp. 575-579 [defendant found guilty of two counts of burglary based on unlawful entries into the same apartment within a span of approximately 2 hours and 15 minutes].) He tries to

11.

distinguish *Washington* on grounds that the present case involved only one successful "entry" that occurred within moments of the conduct upon which the attempted burglary conviction was based. The argument is unconvincing, as *Washington* merely illustrates the general rule that "a defendant may be convicted of multiple crimes - even if the crimes are part of the same impulse, intention or plan - as long as each conviction reflects a completed criminal act." (*People v. Kirvin* (2014) 231 Cal.App.4th 1507, 1518 [citing numerous examples of the rule's applicability to "crimes that do not monetize and aggregate harm or damage."].)

Viewing the record in the light most favorable to the judgment, the evidence permitted the jury to find the crime of attempted burglary was committed when Canady tried to climb through the kitchen window and fell backwards to the ground. This "direct but ineffectual act done towards" the commission of burglary satisfied the final element of the offense. (§§ 21a, 459, 664.) Canady could have chosen to leave at that point, but instead walked around to a different part of the house and engaged in a new course of conduct that resulted in an unlawful entry into the residence. It is also possible that the two incidents involved different criminal intentions (e.g. intent to commit felony assault against Ms. Marshall and later the intent to commit felony assault against Mr. Booker). As so construed, the evidence allowed for separate convictions under Counts 1 and 4.

## **DISPOSITION**

The judgment is affirmed.

_____

GOMES, J.

WE CONCUR:

_____

HILL, P. J.

_____

LEVY, J.

13.